BG

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS,
## EASTERN DIVISION

RICARDO GONZALEZ )
)
Plaintiff, )
)
v. )
)
CITY OF CHICAGO, a municipal corporation, )
GARRY F. McCARTHY, former Superintendent )
of Police of the City of Chicago, JOHN J. )
ESCALANTE, former Interim Superintendent of )
Police, EDDIE T. JOHNSON, Superintendent of )
Police, JUAN RIVERA, Chicago Police Chief, )
EUGENE WILLIAMS, Chicago Police Chief, )
*JACQUELINE ELLISON, Chicago Police Lt.* )
MAX A. CAPRONI, former Executive Director of )
the Police Board for the City of Chicago, ILANA )
ROSENZWEIG, former Chief Administrator of )
IPRA, FRATERNAL ORDER OF POLICE, )
CHICAGO LODGE NO. 7, RAY CASIANO JR., )
First Vice President of Fraternal Order of Police )
Lodge 7, NATHANIEL FREEMAN, former IPRA )
Supervising Investigator, LAKENYA WHITE, )
IPRA investigator, DON A. DEVITO, Chicago )
Police Sergeant and UNKNOWN, ANDRES )
ZAYAS JR., Chicago Police Sergeant, DONALD J. )
O'NEILL Civilian Director of Human Resources )
Division, et al., )
)
Defendants. )

**16-cv-08012**
**Judge Andrea R. Wood**
**Magistrate Judge Jeffrey T. Gilbertr**

### JURY TRIAL DEMANDED

_____

Judge

_____

Magistrate Judge

**FILED**

AUG 10 2016 RL

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

### PLAINTIFF'S CLAIMS AGAINST DEFENDANTS
### WITH JURY DEMAND

Now comes the Plaintiff, RICARDO GONZALEZ, by his Attorney, Robert D. Shearer,

and he respectfully submits his Claims against the Defendants named herein. In support of these

claims, Plaintiff states as follows:

## I.     INTRODUCTION

1.     On December 21, 2008, an incident, involving the accidental discharge of mace spray (by another Officer) in a Chicago restaurant, took place. The video footage of the incident shows that when the accidental discharge took place, Plaintiff was not at that location, but was in the restaurant's restroom.

2.     Over five years later, pursuant to the aforesaid incident, the City of Chicago Police Superintendent, IPRA and the POLICE BOARD, as well as others, wrongfully and in violation of GONZAEZ due process rights, imposed and sustained a 30-day suspension and certain rule violations against GONZALEZ.

3.     On January 29, 2014, GONZALEZ, filed a Petition for Administrative Review of the aforesaid 30-day disciplinary suspension and alleged rule violations.

4.     On November 10, 2015, Circuit Court of Cook County Judge Kathleen J. Kennedy overwhelmingly ruled in favor of Officer GONZALEZ and found that the Administrative Decision suspending officer Gonzalez was against the manifest weight of the evidence and violative of Officer Gonzalez's due process rights. Therefore, the Circuit Court of Cook County fully granted Officer GONZALEZ's Administrative Petition and additionally ruled that the administrative decision must be reversed and that Remand is not appropriate. Significantly, the Court also made various other damaging findings against the DEFENDANTS and others, as more fully detailed in this Complaint.

5.     In response, during the proceedings and after Judge Kennedy's November 10, 2015 ruling, the Defendants maliciously engaged in a Conspiracy to severely damage and retaliate against GONZALEZ, utilizing the "CODE OF SILENCE" as well as other improper tactics. In furtherance of the aforementioned scheme and the well-known "Code of Silence", the

Defendants committed various unlawful, retaliatory, and malicious acts, against Mr. GONZALEZ, as fully detailed in this Complaint.

6.     As one egregious example, after Judge Kennedys aforesaid ruling in favor of GONZALEZ, the Defendants and various other parties including the CPD, FOP, and the Department of Law, executed a fraudulent settlement agreement in an attempt to cover-up the unlawful activity against GONZALEZ, circumvent any liability, silence GONZALEZ and prevent GONZALEZ from asserting any legal remedies or rights.

## II.     THE PARTIES

### A.     Plaintiff

7.     PLAINTIFF RICARDO GONZALEZ (hereinafter "GONZALEZ") was at all times complained of a resident of Chicago, Illinois and a duly qualified peace officer employed by Defendant City of Chicago.

### B.     Defendants

8.     DEFENDANT CITY OF CHICAGO (hereinafter "CITY") is a municipal corporation, duly incorporated under the laws of the State of Illinois, is the employer and principal of the DEFENDANT Police Officers, and is responsible for the policies, practices and customs of its Police Department, City Council, Independent Police Review Authority, and Police Board.

9.     DEFENDANT SUPERINTENDENT GARRY F. McCARTHY (hereinafter "McCARTHY") (former Superintendent) was the duly appointed and sworn Chicago Police Superintendent in 2011, and, during his tenure as Superintendent, was responsible for the policies, practices, and customs complained of herein. He is sued in his official capacity as Superintendent.

10. DEFENDANT JOHN J. ESCALANTE (hereinafter "ESCALANTE") was the former City's Interim Superintendent of Police, and as such is responsible for executing, and administering its laws, customs, practices, and policies. In that capacity, he also enforced the laws, customs, practices and policies complained of in this action. He is sued in his official capacity as Interim Superintendent.

11. DEFENDANT EDDIE T. JOHNSON (hereinafter "JOHNSON") is the duly appointed and sworn Chicago Police Superintendent in 2016, and, during his tenure as Superintendent, was responsible for the policies, practices, and customs complained of herein. He is sued in his official capacity as Superintendent.

12. DEFENDANT CHIEF JUAN RIVERA (hereinafter "RIVERA") is now and was at all times complained of an officer employed by Defendant City of Chicago. He engaged in the conduct complained of while acting under the color of law and within the scope of his employment. He is sued in his individual capacity.

13. DEFENDANT CHIEF EUGENE WILLIAMS (hereinafter "WILLIAMS") is now and was at all times complained of an officer employed by Defendant City of Chicago. He engaged in the conduct complained of while acting under the color of law and within the scope of his employment. He is sued in his individual capacity.

14. DEFENDANT LIEUTENANT *JACQUELINE ELLISON* (hereinafter "ELLISON") is now and was at all times complained of an employee by Defendant City of Chicago. She engaged in the conduct complained of while acting under the color of law and within the scope of her employment. She is sued in her individual capacity.

15. DEFENDANT MAX A. CAPRONI (hereinafter "CAPRONI") was the former Executive Director of the Police Board for the City of Chicago. He engaged in the conduct

complained of while acting under the color of law and within the scope of his employment. He is sued in his individual capacity.

16.    DEFENDANT ILANA ROSENZWEIG (hereinafter "ROSENZWEIG") former Chief Administrator of IPRA is now and was at all times complained of employed by Defendant City of Chicago. She engaged in the conduct complained of while acting under the color of law and within the scope of his employment. She is sued in his individual capacity.

17.    DEFENDANT FRATERNAL ORDER OF POLICE, CHICAGO LODGE NO. 7 (hereinafter "FOP") is a non-profit organization with its principal place of business located 1412 W. Washington Blvd #3., Chicago, Illinois 60607.

18.    DEFENDANT RAY CASIANO JR., ("hereinafter "CASIANO") First Vice President of Fraternal Order of Police (FOP) is now and was at all times complained of an officer employed by Defendant City of Chicago. He engaged in the conduct complained of while acting under the color of law and within the scope of his employment. He is sued in his individual capacity.

19.    DEFENDANT NATHANIEL FREEMAN (hereinafter "FREEMAN') was at all times complained of an officer employed by Defendant City of Chicago. Former Supervising Investigator at IPRA. He engaged in the conduct complained of while acting under the color of law and within the scope of his employment. He is sued in his individual capacity.

20.    DEFENDANT LAKENYA WHITE (hereinafter "WHITE") is now and was at all times complained of employed by Defendant City of Chicago. She is an investigator at IPRA. She engaged in the conduct complained of while acting under the color of law and within the scope of his employment. She is sued in his individual capacity.

21.     DEFENDANT DON A. DEVITO (hereinafter "DEVITO") is now and was at all times complained of an officer employed by Defendant City of Chicago. Chicago Police Department Sergeant. He engaged in the conduct complained of while acting under the color of law and within the scope of his employment. He is sued in his individual capacity.

22.     DEFENDANT UNKNOWN (hereinafter "UNKNOWN") (accompanied DON A. DeVITO on November 4, 2015 in a physical confrontation with Gonzalez) is now and was at all times complained of an officer employed by Defendant City of Chicago. He engaged in the conduct complained of while acting under the color of law and within the scope of his employment. He is sued in his individual capacity.

23.     DEFENDANT SERGEANT ANDRES ZAYAS JR. (hereinafter "ZAYAS") is now and was at all times complained of an officer employed by Defendant City of Chicago. He engaged in the conduct complained of while acting under the color of law and within the scope of his employment. He is sued in his individual capacity.

24.     DEFENDANT DONALD J. O'NEILL (hereinafter "O'NEILL") Civilian Director of Human Resources Division is now and was at all times complained of an employee by Defendant City of Chicago. He engaged in the conduct complained of while acting under the color of law and within the scope of his employment. He is sued in his individual capacity.

## UNNAMED CO-CONSPIRATORS

24.     Various other persons, firms and entities not named as Defendants herein have participated as co-conspirators in the violations of law alleged herein, and have aided, abetted and performed acts and made statements in furtherance thereof.

## III.    JURISDICTION AND VENUE

25.     This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and the Constitution of the United States. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343(a). There is jurisdiction over PLAINTIFF'S state law claims pursuant to the Court's supplemental jurisdiction, as codified in 28 U.S.C. § 1367(a).

26.     Venue is proper in this District under 28 U.S.C. § 1391(b). The parties reside in or formerly resided in this judicial district, and the events giving rise to the claims asserted herein occurred here as well.

## IV.    RELEVANT FACTS

## A.    THE ADMINISTRATIVE REVIEW CASE

### Meritless Complaint initiated against GONZALEZ

27.     On December 21, 2008, an incident, involving the accidental discharge of mace spray (by another Officer) in a Chicago restaurant, took place. The video footage of the incident shows that when the accidental discharge took place, Plaintiff was not at that location, but was in the restaurant's restroom.

28.     On that same date of December 21, 2008, a complaint log was initiated falsely and erroneously alleging misconduct by Plaintiff, Chicago Police Officer Ricardo Gonzalez, hereinafter, "GONZALEZ".

29.     Over two years later, on or about March 11, 2011, IPRA, in an unfair and untimely manner, supposedly completed its investigation and apparently recommended a 30-day suspension against GONZALEZ which included various supposed rule violations.

30.     Thereafter, on November 21, 2013, the City of Chicago Police Board, without any legal justification, conducted a hearing in a closed session related to the complaint initiated against GONZALEZ, and issued a vaguely worded and erroneous "Findings and Decisions"

document sustaining the 30-day suspension and all of the alleged rule violations against GONZALEZ.

## The City of Chicago publicly publishes false information in regards to Officer GONZALEZ guilt

31.     Pursuant to the above mentioned Police Board findings, the City of Chicago then publicly published the aforesaid wrongful Findings and Decision against Mr. GONZALEZ on the City of Chicago website.

32.     Thereafter, on or about December 18, 2013, DNAInfo.com (an on-line news organization) published an article presenting the supposed details of the present case against Plaintiff and his identity, then falsely and wrongfully asserted that GONZALEZ was guilty as charged.

33.     In addition, DNA info also published a video of the alleged incident on YouTube, resulting in well over a thousand "hits" by members of the public. However, prior to publishing the video on YouTube, it was apparently altered either by DNA Info or by the CPD or others so as to maliciously attempt to alter what actually occurred.

## On January 16, 2014 (over five years after initiation of the Complaint) GONZALEZ Receives a 30-day Suspension Notification

34.     On December 31, 2013, almost 5 years after the complaint was initiated and 40 days after the Police Board issued the aforesaid written findings, Officer GONZALEZ, received the Police Board findings which were not only false, but also included various errors and false statements. For example:

> a.  The Police Board's written findings erroneously state that "On or about April 19, 2012, the Superintendent of Police ordered the suspension of Police Officer Ricardo Gonzalez, Star No. 10516, for thirty (30) days for violating the following Rules";

b. The Police Board's written findings also erroneously state that "Officer Velez" not Officer GONZALEZ received notification of his suspension on May 2, 2012".

35. On January 16, 2014, well over five years after the subject complaint was initiated, Plaintiff, Officer GONZALEZ, for the first time was personally served with a 30-day suspension notification ordered by Superintendent McCarthy, which as stated previously, is contrary to the Police Board's Findings and Decision document which falsely stated that Officer GONZALEZ "received notification of his suspension on May 2, 2012".

36. On January 16, 2014, GONZALEZ, also for the first time was served an Election/Rejection of Options to Suspension Form, wrongfully indicating "Fonzalez" as the last of "GONZALEZ" and also wrongfully indicating "96971" as the employee number of GONZALEZ.

**Petition for Administrative Review filed by GONZALEZ**

37. On January 22, 2014, GONZALEZ appealed for assistance from the Legal Defense Committee of the FOP to file a Petition for Administrative Review regarding the Police Board's decision which supposedly affirmed a 30-day suspension and which supposedly sustained certain rule violations against GONZALEZ.

38. The FOP subsequently informed GONZALEZ that they were not going to pay his legal fees for the Administrative Review Petition. The FOP also made GONZALEZ aware that they did not want to file any pleadings against the Superintendent and the City of Chicago.

39. After GONZALEZ repeatedly complained, the FOP stated that as a courtesy they would only file the first Administrative Review Petition. Thereafter, on January 29, 2014, the FOP, supposedly on behalf of Officer GONZALEZ, filed a Petition for Administrative Review of the aforesaid 30-day disciplinary suspension and alleged rule violations supposedly imposed on him by the Superintendent of Police, and sustained by the City of Chicago Police Board.

**False assertions in initial Petition for Administrative Review by FOP Attorney**

40.    Significantly, in that Petition, Clarke Devereux, Counsel for the FOP, falsely documented that "On April 19, 2012, GARRY McCARTHY, Superintendent of Police, ordered the suspension of PLAINTIFF, RICARDO GONZALEZ, for thirty (30) days, alleging violations of certain rules of the Chicago Police Department by the Plaintiff".

41.    GONZALEZ immediately made Counsel for the FOP aware that this was an erroneous statement and that it was material to the Administrative Review Case. GONZALEZ then demanded that the FOP Attorney correct this materially false statement. However, Counsel for the FOP refused to amend the Petition.

42.    Thereafter, GONZALEZ was forced to obtain his own outside Attorney and on February 14, 2014, GONZALEZ's new Counsel (Robert Shearer), filed an amended Petition for Administrative Review which also corrected the aforesaid false statement by the FOP Attorney. In that Petition, GONZALEZ contended and presently contends that the Police Board's Findings and Decision as set forth in the aforesaid document dated November 21, 2013, are against the manifest weight of the evidence, are in violation of his due process rights, and are capricious and unreasonable.

**Fraudulent Defensive Responses filed by the City of Chicago Police Board and Superintendent of Police**

43.    On April 3, 2014, the Police Board supposedly filed the Complete Administrative Record as it's Answer. Significantly, the Police Board and it's Counsel further falsely certified that the "Full" record had been filed.

44.    As fully detailed below, upon Administrative Review the Circuit Court of Cook County later found that the City of Chicago Police Board failed to file the full record as required by law.

45. Furthermore, it is evident that the Police Board and its Counsel, picked and chose what to include in the record. In other words, the Police Board and its Counsel, purposefully excluded information from the record that was beneficial to GONZALEZ and detrimental to the Superintendent and the Police Board.

46. On September 5, 2014, the City of Chicago Police Superintendent filed its Reply Brief in defense of the Administrative Decision and in opposition to GONZALEZ Petition for Administrative Review.

47. Significantly at the time the Superintendent and its Counsel filed their first Reply Brief and at the time Police Board filed the Administrative Record as its Answer in opposition, it was evident based on the face of the Administrative Record that the Administrative Decision against GONZALEZ was against the manifest weight of the evidence, violative of Officer Gonzalez's due process rights, and that there was no factual basis for the Police Board's opposition to the Complaint for Administrative Review (as also later found and ruled by Judge Kennedy, as fully detailed below).

## The Superintendent improperly attempts to Dismiss the Administrative Review by alleging a Grievance in Bad Faith

48. On or about December 15, 2014, the Superintendent filed a Supplemental Brief, which was ordered by the Circuit Court, and for the first time alleged that they supposedly just learned that a pending grievance had been filed over a year prior thereto by the Plaintiff and that therefore the present Administrative Review Case should be dismissed for lack of jurisdiction and also supposedly because Plaintiff's administrative remedies allegedly had not been exhausted. Defendants' attorney then made an oral request that the present Administrative Review proceedings be dismissed. Defendants Attorney further stated that Defendants had briefed the situation in their Supplemental Brief.

49.     Counsel for the Plaintiff made the Defendants and the Court aware that a Police Board decision may be reversed only by the trial court. That is, the Board's decision is not subject to the Superintendent's approval, nor may the officer challenge the decision by filing a grievance with the union.

50.     Counsel for GONZALEZ then proffered a document to the Defendants and to the Court which is published by the Chicago Police Board (also available on chiagopoliceboard.org) which outlines the process for handling allegations of misconduct by Chicago Police Officers. That Document states in relevant part that "A Police Board's decision may be reversed only by a Court" and "nor may the officer challenge the decision by filing a grievance with the union". The aforesaid document issued by the Chicago Police Board, specifically states in relevant part as follows:

### III. Appeals of the Police Board's Decisions

"A Police Board decision may be reversed only by a court. That is, the Board's decision is not subject to the Superintendent's approval, nor may the officer challenge the decision by filing a grievance with the union. Under Illinois law, the parties to a Police Board case (the Superintendent and the officer) have the right to appeal the Board's decision by filing a petition for administrative review in the Circuit Court of Cook County."

51.     Nevertheless, on February 13, 2015, and many times thereafter, Defendants Attorney once again intentionally attempted to mislead the Circuit Court of Cook County by stating that "we've [the Plaintiff] got the same case pending before two jurisdictions" and continued to attempt to dismiss the Administrative Review Proceedings because of the supposed alleged grievance by GONZALEZ. This clearly demonstrates that the Defendants were improperly attempting to circumvent the deficiencies in their legal position and arguments, due to the fact that the decision which was rendered against GONZALEZ was clearly against the manifest weight of the evidence, and in violation of Plaintiffs due process rights.

52.    Lastly, the Defendants failed to include any such grievance information in the record and had been arguing the present Administrative Review case for over a year.

**Improper and Malicious Conduct by the Defendants and their Counsel against GONZALEZ during the course of the litigation**

53.    During the course of the litigation, the Defendants and their Counsel committed various other egregious and malicious acts, including but not limited to the following:

a.  Willfully disobeyed various Court orders and intentionally attempted to deceive Judge Kennedy and GONZALEZ;

b.  Intentionally and repetitively misrepresented facts and submitted wrong information in an attempt to deceive the Plaintiff and the Court;

c.  Submitted perjured testimony and associated backdated documents;

d.  Intentionally filed an incomplete record and picked and chose what to include and exclude;

**The Ruling in Favor of Officer GONZALEZ finding a Violation of GONZALEZ Due Process Rights, that the Administrative Decision was against the Manifest Weight of the Evidence, and that Remand is not appropriate**

54.    On November 10, 2015, Circuit Court of Cook County Judge Kathleen J. Kennedy overwhelmingly ruled in favor of Officer GONZALEZ and found that the Administrative Decision suspending officer Gonzalez was; (1) Against the manifest weight of the evidence; and (2) Violative of Officer Gonzalez's due process rights.  The Court also made various other damaging findings against the Police Board, including the fact that:"***there is no factual support for the legal basis of the review by the board***".

55.    Accordingly, the Circuit Court of Cook Couty fully granted Officer Gonzalez's Administrative Review Petition and additionally ruled that: (1) The administrative decision and suspension by the Police Board, which was joined in by the Superintendent, must be reversed, including any alleged violations; and (2) that Remand is not appropriate.

56.     Significantly, on November 10, 2015, Judge Kennedy also specifically found

and ruled as follows, as directly quoted from the Court Transcripts which were read into the

record by Judge Kennedy:

a. The record in this case was fatally deficient in that "the record cannot appropriately be supplemented and the procedural deficiencies in this case cannot be cured"

b. "No extension requests appear in this record.";

c. After December 22nd, 2009 ", the record in this case is silent as to the IPRA superintendent processes thereafter. All dates seem to have been supplied by the parties without reference to the record.";

d. "*** the record includes no evidence of a disciplinary recommendation or order being communicated to Officer Gonzalez at any time;

e. "*** the record reflects that Officer Gonzalez requested superintendent review direct appeal on September 10th, 2011. That is found at PB0013. The record includes no evidence that the requested review occurred.";

f. "No evidence in the record shows that the superintendent ordered Officer Gonzalez's suspension on or about April 19th, 2012, as is stated in the administrative decision.";

g. "The use of quote, on or about, close quote in the administrative decision is itself problematic in light of the time frames that may apply to the issuance of such an order.";

h. "No evidence in the record shows that Officer Gonzalez, referred to as Officer Velez, V-e-l-e-z in the decision, a typo that to the Court reflects the overall carelessness exhibited by the agency in this case, received notification of suspension on May 2nd, 2012. Thus, there is no factual support for the legal basis of the review by the board which is not even directly stated, but implied, that Officer Gonzalez did not make an election within 10 working days.";

i. "Nothing in the record shows what occurred between the IPRA sustained finding of approximately December 22nd, 2009, and Investigator White's summary report to IPRA's chief administrator dated February 22nd, 2011, and likewise, nothing explains what happened from December -- rather February 22nd, 2011 to the alleged suspension order of April 19th, 2012.";

j. The board conducted no hearing in this case, but apparently relied on evidence adduced in the hearings and/or investigations completed on other officers implicated in the December 21st, 2008 incident. Although some of the officers' statements are in this record, the investigations and hearings are not;

k. "The Court finds it important to conclude by noting several other matters.
First regarding separate grievance proceedings. In the supplemental brief filed
December 15th, 2014, the superintendent asserts, with information outside the
record, that counsel for the superintendent learned on December 12th, 2014,
though plaintiff was notified in March, 2014, that the Fraternal Order of
Police has demanded an arbitration of the grievance plaintiff filed challenging
the same suspension challenged in this case, and that this case should be
dismissed until plaintiff has exhausted his administrative remedies. However,
if the grievance were not properly filed it would be unlikely to form the basis
for dismissal of the petition for administrative review. Further, the Court is
unaware of the filing of a motion to dismiss as opposed to a reference to
dismissal in a brief. Importantly, none of this was in the record below."

l. "With regard to other irregularities the record shows the letter to Officer
Gonzalez dated December 26th, 2013, quote, via Certified Mail, Certified
U.S. Mail, close quote, quote Re: Suspension Review No. 13SR2311, Ricardo
Gonzalez. Dear Officer Gonzalez: The Police Board is issuing as of the above
date its finding regarding the review of your suspension. Enclosed is a copy of
the findings and decision and a notice regarding the right to appeal a decision
of the board. Sincerely, Max A. Caproni, Executive Director. There was a
slight commission in that quote."

m. "The record inexplicably shows a Certified Mail receipt received by the
Chicago Police Department Documents Services Section the next day,
December 27th, 2013, certified by the executive director to be Certified Mail
receipts for the service of the findings and decisions on the parties. It is
unlikely that this receipt evidences the date Officer Gonzalez signed for the
Certified Mail, though, perhaps that is not the reason for including these
documents in the record."

n. "More important the record includes, quote, via hand delivery, close quote, to
superintendent, attention general counsel to the superintendent from executive
director certifying the written findings and decision are attached, which the
board is issuing the above date, December 26th, 2013."

o. "After the superintendent signs the last page of the findings and decision,
please return the original document to me. This suggests a lack of finality, and
indeed, the record reflects that the last page of the findings and decision
shows, quote, received a copy of these findings and decision this 2nd day of
January, 2014, with the 4 handwritten in, signed by the superintendent. These
issues are not dispositive, but like the typo noted previously, reflect the
careless procedures employed in this case."

p. "Because the record contains no evidence that defendants complied fully and
timely with the procedures for a 16 to 30-day suspension, the suspension must
be reversed, and is violative of Officer Gonzalez's due processes rights.
Remand is not appropriate in this case.";

q. "It is the agency's duty to provide the record to enable the Court to determine whether the agency's findings are against the manifest weight of the evidence. That is from Miles versus Housing Authority, 2115 Il Ap. 1st 141292";

r. "For the reasons stated, the administrative decision suspending Officer Gonzalez is reversed, and any pending motions are denied as moot, and that fully resolves plaintiff's amended petition for administrative review. So I would expect an order that indicates for the reasons stated in the record the decision is reversed. Thank you, counsel."

**No Appeal by Defendants and Defendants Concede that they Lost**

57. Significantly, neither of the Defendants appealed the substance of Judge Kennedy's November 10, 2015 decision or any of her specific findings. Furthermore, it is important to note that on November 10, 2015, prior to reading her ruling into the record, Judge Kennedy stated that she would "***certainly expect the parties to address such an oversight if appropriate in a post judgment motion", related to her November 10, 2015 ruling, which neither Defendant did.

**Fraudulent Settlement Letter by City of Chicago to cover-up and indemnify the Defendants**

58. In Response to Judge Kennedy's November 10, 2015 ruling in favor of GONZALEZ and in making extremely damaging findings against the Defendants, the Defendants and various other parties including the CPD, FOP, and the Department of Law, executed a fraudulent settlement agreement in an attempt to cover-up the unlawful activity against GONZALEZ, circumvent any liability, silence GONZALEZ and prevent GONZALEZ from asserting any legal remedies or rights.

59. However, regarding the aforesaid fraudulent settlement letter, on October 23, 2015, the CPD Lodge withdrew the supposed grievance filed by GONZALEZ.

60. Consequently, on November 6, 2015, due to the withdrawal of the supposed grievance, the "City of Chicago Department of Law" cancelled the supposed December 15, 2015 Arbitration, by executing a letter "Re: "City of Chicago (Chicago Police Department) and FOP,

Lodge No.7 Grievant: Ricardo Gonzalez Grievance: 393-14-001" which was supposedly sent "via electronic mail only" to the supposed "Arbitrator Nielsen". Significantly, the aforesaid November 6, 2015 Letter was copied to various CPD individuals/others, including Wynter Jackson, the Director of the Management and Labor Affairs Section for the CPD.

61. However, on November 24, 2015 (after Judge Kennedy's November 10, 2015 ruling in favor of GONZALEZ) Ray Casiano Jr., First Vice President of the FOP and Co-Chairman Grievance Committee, executed a letter "Re: Grievance No. 393-14-001/112" which was apparently mailed "Via Certified and Regular Mail" (U.S.P.O. Mail). Said letter, which was addressed to "Officer Gonzalez" stated the following, in pertinent part:

> "The Grievance Committee met and has conducted a review of our above-captioned grievance. At the Grievance Committee meeting a vote was taken and the committee voted to settle your grievance based on the offer made by the City's Management and Labor Affairs Section to reduce your suspension from 30 days to 15 days and remove the Rule 14 Violation from your record. This decision is final. A copy of the Settlement Agreement will be forwarded to you once completed and your file will be closed.

62. Thereafter, on December 3, 2015, the FOP executed and mailed a letter "Re: Grievance No. 393-14-001/112" that was addressed to "Officer Gonzalez" and which stated in pertinent part that "Enclosed herewith is a copy of the fully executed Settlement Agreement relative to your above-captioned grievance." Accordingly, the aforesaid December 3, 2015 letter included as an attachment the above mentioned supposed "SETTLEMENT AGREEMENT" which was dated and executed on December 2, 2015 and signed by Wynter Jackson – City of Chicago, Chicago Police Department, and the FOP – Chicago Lodge No. 7. Significantly, that Supposed "SETTLEMENT AGREEMENT") stated in pertinent part as follows:

> "This Settlement Agreement (Settlement) is entered into by and between the Fraternal Order of Police, Chicago Lodge No. 7 (Union) and the City of Chicago, Chicago Police Department (Employer). In order to settle and resolve all issues raised in the referenced grievance on an amicable basis, the parties agree to the following:

Grievant Officer's thirty (30) day suspension, which gave rise to the listed grievance, shall be reduced to a fifteen (15) day suspension. Any sustained Rule 14 violation will be removed from the Complaint Register findings record for CR 1022600. The disciplinary record of the Grievant will be amended to reflect these changes

The Union hereby withdraws, with prejudice, the referenced grievance.

The Settlement shall not constitute an admission of liability by or as an admission of the legal position of any party and shall not be precedent setting and further, shall not be used, referred to or cited in any further arbitration, administrative or court proceeding between the parties except as may be necessary to enforce the provisions hereof or the rights of the parties hereto."

## B.   OTHER RETALIATION AGAINST GONZALEZ

63.   On May 13, 2015, GONZALEZ attended an appointment with Sergeant DeVito of the Internal Affairs Division of CPD at Police Headquarters. During the course of the meeting, DeVito became angry and irate and stated "I know where you're going with this", and repeatedly threatened, "You're Done" to GONZALEZ. DeVito then had GONZALEZ escorted out of the building, during which time GONZALEZ voluntarily left Police Headquarters. On May 14, 2015, Officer GONZALEZ concerned for his safety then documented this incident in writing which GONZALEZ emailed to DeVito. In that email, GONZALEZ asked DeVito what DeVito meant when he repeatedly threatened "your done" to GONZALEZ and why he stated "I know where you are going with this". However, DeVito refused to answer or even address GONZALEZ's email, which further made GONZALEZ feel threatened and, because of this, feared for his life.

### GONZALEZ Injured on Duty

64.   On August 11, 2015, GONZALEZ was injured on duty and was subsequently transferred to the Northwestern Hospital Emergency Room by ambulance where he was treated for the aforesaid injuries sustained while on duty.

65.     GONZALEZ was then treated by the Emergency Room personnel, where he was administered Norco and prescribed the medication diazepam (Valium). GONZALEZ was also instructed to follow up with Corporate Health and a medical specialist for the aforesaid injuries sustained while on duty, which were later discovered to be a cervical sprain by a neurosurgeon as more fully detailed in this Complaint.

66.     On August 17, 2015, GONZALEZ attended a CPD Medical Section appointment at which point Officer Beth Finnegan observed and stated to GONZALEZ that he looked very distressed. Officer GONZALEZ then explained to Officer Finnegan that he was experiencing severe emotional distress due to the misconduct, retaliatory financial attacks and a violation of due process rights being perpetrated against GONZALEZ by the Defendants pursuant to his Administrative Review Case where GONZALEZ was exposing the aforesaid misconduct by the Defendants.

67.     Officer Finnegan then stated that she noticed that Gonzalez was at his breaking point related to his mental status and that he had to talk to a therapist/doctor right away. She also recommended that a Doctor evaluate Officer GONZALEZ's physical work related injury.

**GONZALEZ Begins Emotional Therapy with his Psychologist**

68.     On August 18, 2015, GONZALEZ called his Primary Care Doctor regarding the aforesaid stress and anxiety. The Primary Doctor prescribed anxiety and stress medication and referred GONZALEZ to a psychologist (Dr. Echeverria).

69.     On August 20, 2015, GONZALEZ began emotional therapy with Dr. Echeverria (his Psychologist) which is still on-going as of the present date.

**GONZALEZ Begins Evaluation by Orthopedic Doctor**

70.     On August 20, 2015, GONZALEZ scheduled and attended an appointment at Illinois Masonic Hospital with Dr. Ellis Namm (a CPD approved Doctor) pursuant to the injuries he sustained while on duty.  On that day, Dr. Ellis Namm evaluated officer GONZALEZ, after which he ordered GONZALEZ to stay off-duty, until further notice.  Dr. Namm then scheduled a follow-up visit, prescribed new medication and physical therapy and recommended that GONZALEZ see a Neurologist to further evaluate his injuries.

71.     On August 21, 2015, GONZALEZ attended a Medical Section Appointment with the CPD, at which point GONZALEZ informed Officer Beth Finnegan, the Medical Section Personnel representative, that he was seeing a psychologist (Dr. Echeverria) and that Dr. Namm had recommended that GONZALEZ undergo physical therapy and also that he be evaluated and treated by a Neurologist.

72.     Also, GONZALEZ once again informed Officer Finnegan that his emotional and financial distress was due to retaliatory attacks and misconduct by the Defendants in his Administrative Review case, as well as others.  At the end of the appointment, Officer Finnegan scheduled GONZALEZ to attend physical therapy with Athletico.

**GONZALEZ Begins Physical Therapy and evaluation by Neurosurgeon**

73.     On August 24, 2015 GONZALEZ attended his first physical therapy appointment with Athletico.

74.     On September 9, 2015, GONZALEZ attended his first medical appointment at Rush Hospital with his Neurologist, Dr. Deutch, who was on the CPD list of approved Doctors. After being examined, GONZALEZ was initially diagnosed with a cervical strain. The Neurologist then recommended that GONZALEZ remain off-work and continue physical

therapy. Lastly, Dr. Deutch prescribed medications and scheduled a follow-up visit for reevaluation on November 4, 2015.

75.     October 9, 2015, GONZALEZ called the CPD Medical Section Department after which Paulet, a medical section employee informed GONZALEZ that the next IOD appointment was extended to November 5, 2015 and that Celestine was his new case worker.

76.     On November 4, 2015, Gonzalez was scheduled for and attended an appointment with his neurologist. After that examination, the neurologist ordered the following: (1) that GONZALEZ undergo an MRI regarding his physical injuries received on-duty; (2) that Gonzalez continue and complete his physical therapy which was scheduled to last up to and until December 7, 2015; (3) that Gonzalez continue taking his medications; (4) that GONZALEZ NOT return to work at this time; and (5) that Gonzalez attend a follow up visit for re-evaluation by the neurologist, which an appointment has been scheduled for December 2, 2015.

**First Assault and Battery against GONZALEZ by DeVito**

77.     On November 4, 2015, after Gonzalez concluded the above described examination by his Neurologist, GONZALEZ called the Chicago Police Departments' medical section in order to confirm his next scheduled appointment with the medical case worker. In response, the medical desk personnel on duty at the time confirmed that the next scheduled appointment was on November 5, 2015. At that point, GONZALEZ asked if he could come in that same day, November 4, 2015, because he was already in the area, but primarily because the MRI ordered by the neurologist required prior Department's approval by the medical section and because Gonzalez did not want to delay that MRI. The medical section then confirmed that Gonzalez could come in on November 4, 2015.

78.     On November 4, 2015 at approximately 11:10 am, Mr. GONZALEZ arrived at the 35th and Michigan Chicago Police Department Headquarters in order to meet with the medical section case worker. At that time, GONZALEZ was accompanied by his aunt who is approximately 80 years old.

79.     At that point, Gonzalez entered the medical section room and provided paperwork from his neurologist to the medical section front desk staff and was told to sit and wait. Shortly afterwards, Gonzalez then observed that the medical section worker on the desk was on the phone engaged in a conversation, during which the Medical Section Worker stated non verbatim to the unknown person, "He is here. You can see him after he is done".

80.     Shortly thereafter and prior to his meeting with the medical section case worker, GONZALEZ shockingly observed Sgt. DeVito of IAD and another tall male individual approximately three feet away from Gonzalez. DeVito and the other individual positioned themselves in a way so that they blocked the exit door way.

81.     As stated previously, GONZALEZ had been threatened by DeVito on at least one other occasion, during which DeVito repeatedly yelled "your done!, your done!", then ordered that GONZALEZ be escorted out of the 35th and Michigan Police Headquarters Building.

82.     Due to the above mentioned facts, when Gonzalez observed DeVito at Police Headquarters on November 4, 2015, Gonzalez began to experience shortness of breath and fear, and also feared for the well-being of his close relative. After seeing DeVito, Gonzalez then attempted to exit the room while holding his elderly relative, in order to protect her and to obtain medical assistance because of the symptoms he was experiencing.

83.     In response, DeVito and the other male individual blocked the doorway and DeVito stated "no, no, no". As Gonzalez continued to attempt to exit the doorway, DeVito

grabbed Gonzalez by the lower arm in an obvious attempt to prevent Gonzalez from exiting the room. However, Gonzalez and his relative were then able to move past DeVito and the other individual.

84.     GONZALEZ then continued to walk away, escorting his relative, at which time DeVito followed Gonzalez to the main lobby at which point Gonzalez and his relative heard, non-verbatim, "I will just lock you up".

**First Hospital Visit due to DeVito Attack**

85.     Gonzalez and his relative then exited the Headquarters building after which Gonzalez's relative and Gonzalez drove off. During that time, Gonzalez continued to experience constant chest pain and shortness of breath. Because of these symptoms, Gonzalez then called 911 and was picked up by an ambulance at 33rd and State Street.

86.     GONZALEZ was then taken to the Mercy Hospital Emergency Room. After the examination, Gonzalez was diagnosed as having had experienced a panic/anxiety attack and was administered medication.

**Professional Opinion by GONZALEZ Psychologist recommending No Contact (Due to GONZALEZ mental state**

87.     After leaving the Mercy Hospital Emergency Room, Gonzalez went to visit his Psychologist at Illinois Masonic. On November 5, 2015, Gonzalez once again met with his Psychologist who recommended that Mr. Gonzalez not return to work in any capacity and that there be no physical or verbal contact by the Chicago Police Department, IPRA, DeVito, or any other related parties at that time. On November 6, 2015, the Psychologist then issued a written professional opinion and communicated that written opinion to Mr. Gonzalez's medical case worker via fax after which GONZALEZ Psychologist received confirmation. Said professional opinion stated in pertinent part as follows:

"Mr. Ricardo appears to have experienced a panic attack after an encounter while at the Medical Section of the Police Department. Given Mr. Ricardo's reaction, it is recommended that he remain on Injured on Duty Status and continue in weekly individual psychotherapy prior to returning to active duty, either full time or part time. At this time, it is recommended that all communication with the Police Department, IPRA, IAD or any other related parties go through his Attorney, Robert D. Shearer. As such, it is recommended that Mr. Gonzalez have no verbal or physical contact with the above mentioned parties at this point in time."

88.     On November 6, 2015, GONZALEZ Counsel emailed a letter to various

Defendants and other individuals including IAD Chief Juan Rivera, IAD Sergeant Don DeVito

and Lieutenant Jacqueline Ellison from the medical section, which stated in pertinent part as

follows:

Although your Department has been made aware of Mr. Gonzalez's condition, as well as the above mentioned facts related to Sgt. DeVito, apparently your department has failed to take any action to restrain DeVito, and has completely ignored my clients physical and emotional state while he is on IOD leave from the Police Department, as well as strict Doctors orders, regarding my client's physical and emotional health.

This failure to consider Mr. Gonzalez's physical and emotional state, resulted in unlawful restraint and physical contact with my client by DeVito and the above described physical/emotional harm, as well as undue emotional distress and restraint of Gonzalez's elderly female relative, who is a mother figure to Mr. Gonzalez.

In addition, even though Mr. DeVito and the Chicago Police Department are or should be aware that Mr. Gonzalez is under medications, DeVito still seems intent on attempting to extract a statement from Mr. Gonzalez (which upon information and belief is for an improper purpose as previously documented and communicated to you) and even suggested he would lock up my client unless he compiled. By preventing Mr. Gonzalez from proceeding and completing his meeting with the Medical Case worker so he could obtain the required approval for the MRI which was ordered by Gonzalez's Neurologist, Sgt. DeVito and the Chicago Police Department has also impeded my client's Medical treatment.

89.     Due to continued harassment by some of the Defendants in direct violation of

GONZALEZ's Psychologists Professional Opinion, thereafter, on various occasions, including

on November 18, 2015 via email and December 1, 2015 via mailed certified letters,

GONZALEZ and his Attorney continued to communicate GONZALEZ Psychologists Professional Opinion to those Defendants and others.

### Second Physical attack against GONZALEZ by Officer Zayas

90. On November 16, 2015, GONZALEZ attended his medical appointment at the MRI Lincoln Imaging Center. During that appointment, GONZALEZ underwent an MRI examination as ordered by his Neurosurgeon, which imaged his cervical spine and shoulder.

91. On December 14, 2015 at approximately 11:35 a.m., GONZALEZ arrived at Rush Hospital to attend a medical appointment with his neurologist. The purpose of the visit, was to discuss the results of his aforesaid MRI.

92. As GONZALEZ was checking in with the hospital desk personnel, GONZALEZ observed an unknown male staring at GONZALEZ and standing between GONZALEZ and the exit. The male individual then stated to GONZALEZ that he was Sergeant Zayas.

93. GONZALEZ immediately started to experience heart palpitations, shortness of breath, and a high level of anxiety, due to the fact that he felt threatened and feared for his life. In attempting to leave in order to receive medical attention, GONZALEZ was then forced to walk around Zayas, who, in response, raised his hand to make contact with GONZALEZ. GONZALEZ then screamed in a loud voice "Stop threatening me". GONZALEZ was then able to exit the building.

### Second Hospital Visit at Northwestern Hospital due to Zayas Assault against GONZALEZ

94. After exiting Rush Hospital, GONZALEZ was still experiencing the aforesaid symptoms. Accordingly, on December 14, 2015, after leaving Rush Hospital in an attempt to escape any danger at that location and seek medical assistance, GONZALEZ then took a cab to the Northwestern Memorial Hospital Emergency Room. Upon arriving to the Emergency Room,

GONZALEZ was immediately treated. However, the Hospital personnel informed GONZALEZ that due to his mental state at that time, they would not release him without prior approval from his Psychologist. After the Hospital personnel contacted and obtained approval from GONZALEZ's Psychologist, he was then released from the Hospital.

95.     On December 15, 2015, Gonzalez cancelled his physical therapy session at Athletico and stated to Athletico personnel that the reason for his cancellation was a concern for his safety.

**The CPD retaliates by Stopping GONZALEZ pay and continues Harassment**

96.     On January 1, 2016, the City of Chicago stopped paying GONZALEZ.

97.     The CPD and others continued to harass GONZALEZ and his Family, in direct violations of GONZALEZ'S Psychologists professional opinion, including at his home and at his family's home, on January 8, 2016, and February 18, 2016 at approximately 11:20 pm and other dates.

98.     Since Mr. Gonzalez broke the Chicago Police Department's well established "Code of Silence", by challenging the Police Board's finding as to the claimed Rule Violations and uncovering misconduct by certain DEFENDANTS as well as others, PLAINTIFF has also been harassed orally and in writing, thereby further creating a hostile work environment.

**Gonzalez begins therapy by a Psychiatrist due to repeated attacks and subsequent additional Financial and Emotional Distress**

99.     On January 4, 2016, GONZALEZ attended his first appointment with Dr. Gorman for Psychiatric evaluation as recommended by his psychologist, due to the aforesaid repeated attacks and subsequent additional financial and emotional distress.

100.     On February 1, 2016, GONZALEZ attended a medication visit with Doctor

Gorman after which Dr. Gorman prescribed additional medication, which GONZALEZ is

currently on at the present time.

101.     On April 14, 2016, GONZALEZ arranged and turned in his badge and ID to the

City of Chicago Police Department and informed the Chicago Police Department of the location

of his Shield at the office.

## CLAIMS FOR RELIEF BY RICARDO GONZALEZ

### COUNT I
### VIOLATION OF DUE PROCESS
(GONZALEZ v. ALL DEFENDANTS)

102.    Plaintiff reasserts and incorporates herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

103.    As described more fully above, the Defendants, while acting individually, jointly and in conspiracy, as well as within the scope of their employment where relevant, deprived the Plaintiff of his constitutional rights to procedural and substantive due process.

104.    As previously stated, On November 10, 2015, Circuit Court of Cook County Judge Kathleen J. Kennedy overwhelmingly ruled in favor of Officer GONZALEZ and found that the Administrative Decision suspending officer Gonzalez was; (1) Against the manifest weight of the evidence; and (2) Violative of Officer Gonzalez's due process rights. The Court also made various other damaging findings against the Police Board, including the fact that:"***there is no factual support for the legal basis of the review by the board***".

105.    Therefore, the Circuit Court of Cook County fully granted Officer Gonzalez's Petition and additionally ruled that: (1) The administrative decision and suspension by the Police Board, which was joined in by the Superintendent, must be reversed, including any alleged violations; and (2) that Remand is not appropriate.

106.    Significantly, on November 10, 2015, Judge Kennedy also specifically made various other damaging findings against the Defendants as more fully detailed in this Complaint.

107.    As a result of this violation of his constitutional rights to procedural and substantive due process, the Plaintiff has suffered injuries and damages in an amount to be determined at trial. The damages also include but are not limited to:

a. Attorney's fees incurred by the Plaintiff related to the Administrative Decision totaling more than; and

b. Loss of past, present and future income.

108. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

## PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, the PLAINTIFF, GONZALEZ, respectfully requests the following relief from this court:

A. Enter Judgment in favor of the Plaintiff and against the Defendants awarding damages, as well as costs and attorneys' fees incurred during the course of the Administrative Review Proceedings totaling over

B. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and other attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and

C. Any other relief this Court deems appropriate and just.

## COUNT II
## MALICIOUS PROSECUTION

### (PLAINTIFF v. CITY OF CHICAGO, CHICAGO POLICE BOARD, CHICAGO POLICE SUPERINTENDENT)

109. PLAINTIFF reasserts and incorporates herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

110. As fully detailed in this Complaint, DEFENDANT caused PLAINTIFF to be improperly subjected to judicial/civil proceedings for which there was no probable cause.

111. These judicial/civil proceedings were instituted and continued maliciously, resulting in injury to the PLAINTIFF.

112.     The relevant proceedings were terminated in Plaintiff's favor. As previously stated, On November 10, 2015, Circuit Court of Cook County Judge Kathleen J. Kennedy overwhelmingly ruled in favor of Officer GONZALEZ and found that the Administrative Decision suspending officer Gonzalez was; (1) Against the manifest weight of the evidence; and (2) Violative of Officer Gonzalez's due process rights. The Court also made various other damaging findings against the Police Board, including the fact that:"***there is no factual support for the legal basis of the review by the board***".

113.     Therefore, the Circuit Court of Cook County fully granted Officer Gonzalez's Petition and additionally ruled that: (1) The administrative decision and suspension by the Police Board, which was joined in by the Superintendent, must be reversed, including any alleged violations; and (2) that Remand is not appropriate.

114.     Significantly, on November 10, 2015, Judge Kennedy also specifically made various other damaging findings against the Defendants as more fully detailed in this Complaint.

115.     The Defendant's identified above made certain accusation and assertions, knowing those accusations to be without probable cause, and they made statements to the courts with the intent of exerting influence to institute and continue the judicial proceedings.

116.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

117.     As a direct and proximate result of this misconduct, Plaintiff's sustained and continue to sustain, injuries including pain, suffering, and damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, the PLAINTIFF, respectfully request the following relief from this court:

      A. Enter Judgment in favor of the Plaintiff and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and

      B. Any other relief this Court deems appropriate and just.

## COUNT III
## ABUSE OF PROCESS

(PLAINTIFF v. CITY OF CHICAGO, CHICAGO POLICE BOARD, CHICAGO POLICE SUPERINTENDENT)

118. PLAINTIFF reasserts and incorporates herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

119. As described more fully above, the Defendants named above have misused the legal process during the Administrative Review Proceedings, by instituting and/or continuing the above captioned matters, to accomplish a purpose outside the scope of the process itself.

120. Defendants have instituted and/or continued these proceedings against PLAINTIFF for ulterior motives, as more fully detailed above, including but not limited to: 1. drown GONZALEZ in legal debt; 2. hinder and delay the Administrative Proceedings; and 3. inflict financial and emotional damage on GONZALEZ.

121. PLAINTIFF has been harmed directly by the Defendants conduct. Defendants instituted these proceedings against Plaintiff for improper and unlawful purposes. Defendants conduct in misusing legal process is being done willfully and maliciously with a wanton disregard.

122.    As a direct and proximate result of Defendants' misapplication of process, Plaintiff has suffered damages including severe emotional distress and anguish, as is more fully alleged above, and damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, the PLAINTIFF, respectfully requests the following relief from this court:

   A. Enter Judgment in favor of the Plaintiff and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and

   B. Any other relief this Court deems appropriate and just.

## COUNT IV
## FRAUD
(GONZALEZ v. DEVITO)

123.    Plaintiff reasserts and incorporates herein by reference the allegations made in all previous paragraphs, inclusive as if though fully set forth herein.

124.    As fully detailed in this Complaint and previously mentioned, in Response to Judge Kennedy's November 10, 2015 ruling in favor of GONZALEZ and extremely damaging findings against the Defendants, the Defendants and various other parties including the CPD, FOP, and the Department of Law, executed a fraudulent settlement agreement in an attempt to cover-up the unlawful activity against GONZALEZ, to protect themselves from any liability, to silence GONZALEZ and to prevent GONZALEZ from asserting any legal remedies or rights.

125.    The above named Defendants knew that the subject settlement letter was fraudulent as fully detailed above.

126. The above-mentioned fraudulent settlement letter by Defendants was intended to inflict severe emotional distress and to induce and actually induced Plaintiff to spend additional legal monies. Plaintiff reasonably and justifiably relied on Defendants fraudulent representation.

127. Plaintiff was damaged by the fraudulent settlement agreement through the infliction of emotional distress and by spending additional time and money related to legal expenses.

128. As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

## PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, GONZALEZ respectfully requests the following relief from this court:

A. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and

B. Any other relief this Court deems appropriate and just.

## COUNT V
## ASSAULT AND BATTERY
(GONZALEZ v. DEVITO)

129. Plaintiff reasserts and incorporates herein by reference the allegations made in all previous paragraphs, inclusive as if though fully set forth herein.

130. GONZALEZ was physically and verbally assaulted by DeVito as described in this complaint.

131. Plaintiff was subjected to the aforesaid harmful or offensive touching, without his consent, by DEVITO and upon information and belief, also by one of the DEVITO's fellow

employees who at a minimum took no steps to prevent Plaintiff from suffering an assault and battery.

132.     Defendant DeVito engaged in this aforesaid misconduct with the intent to harm the Plaintiff.

133.     The foregoing acts by the Defendant were done intentionally.

134.     These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

135.     As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

## PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, GONZALEZ respectfully requests

the following relief from this court:

> C. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and

> D. Any other relief this Court deems appropriate and just.

## COUNT VI
## ASSAULT
### (GONZALEZ v. ZAYAS)

136.     Plaintiff reasserts and incorporates herein by reference the allegations made in all previous paragraphs, inclusive as if though fully set forth herein.

137.     GONZALEZ was assaulted by ZAYAS as fully detailed in this Complaint.

138.     Defendant ZAYAS engaged in this aforesaid misconduct with the intent to harm the Plaintiff.

139.    The foregoing acts by the Defendant were done intentionally.

140.    These acts placed Plaintiff in fear or reasonable apprehension of an immediate battery or harmful or offensive touching.

141.    As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

### PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, GONZALEZ respectfully requests the following relief from this court:

   A.  Enter Judgment in favor of the Plaintiff and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and

   B.  Any other relief this Court deems appropriate and just.

### COUNT VII

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(GONZALEZ v. ALL DEFENDANTS)

142.    Plaintiff reasserts and incorporates herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

143.    As described more fully in this Complaint, the Defendants, all while acting individually, jointly, and in conspiracy, as well as within the scope of their employment where applicable, committed acts and conduct that were extreme and outrageous.

144.    The Defendants intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff GONZALEZ, as is more fully alleged in this complaint.

145.    Said actions and conduct did directly and proximately cause severe emotional distress to GONZALEZ, and thereby constituted intentional infliction of emotional distress.

146.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the right of others.

147.    As a direct and proximate result of Defendants' wrongful acts, GONZALEZ suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

## PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, the Plaintiff, GONZALEZ, respectfully requests the following relief from this court:

A.    Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and

B.    Any other relief this Court deems appropriate and just.

## COUNT VIII

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
(GONZALEZ v. ALL DEFENDANTS)

148.    Plaintiff reasserts and incorporates herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

149.    As described more fully in this Complaint, the Defendants, all while acting individually, jointly, and in conspiracy, as well as within the scope of their employment where applicable, committed acts and conduct that were extreme and outrageous.

150.    The Defendants intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff GONZALEZ, as is more fully alleged in this complaint.

151.    Said actions and conduct did directly and proximately cause severe emotional distress to GONZALEZ, and thereby constituted intentional infliction of emotional distress.

152.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the right of others.

153.    As a direct and proximate result of Defendants' wrongful acts, GONZALEZ suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

## PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, the Plaintiff, GONZALEZ, respectfully requests the following relief from this court:

>    A. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and

>    B. Any other relief this Court deems appropriate and just.

## COUNT IX
## DEFAMATION AND LIBEL
(GONZALEZ V. CITY OF CHICAGO, POLICE BOARD and SUPERINTENDENT)

154.    Plaintiff reasserts and incorporates herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

155.    The Defendants described above made false statements, both orally and in writing, as more fully detailed in this Complaint that are libelous and defamatory *per se* in that

they impute to PLAINTIFF a want of integrity in the line of his duties, prejudice the Plaintiff and impute a lack of honesty, integrity and ability in his trade and in his personal life.

156.    As previously stated, on November 21, 2013, the City of Chicago Police Board, without any legal justification, conducted a hearing in a closed session related to the complaint initiated against GONZALEZ, and issued a vaguely worded and erroneous "Findings and Decisions" document sustaining the 30-day suspension and all of the alleged rule violations against GONZALEZ.

157.    Pursuant to the above mentioned Police Board findings, the City of Chicago then publicly published the aforesaid wrongful Findings and Decision against Mr. GONZALEZ on the City of Chicago website.

158.    Thereafter, on or about December 18, 2013, DNAInfo.com (an on-line news organization) published an article presenting the supposed details of the present case against Plaintiff and his identity, then falsely and wrongfully asserted that he was guilty as charged. For example, the DNA Info article stated in pertinent part as follows:

> "IPRA found that all four cops violated Rule 14 – repeatedly lying to cover up the incident – and recommended termination for Ceja and Yoshimura and 30 – day suspensions for the other two officers."

159.    In addition, DNA info also published a video of the alleged incident on YouTube, resulting in well over a thousand "hits" by the public. However, prior to publishing the video on YouTube, it was apparently altered either by DNA Info or by the CPD so as to maliciously attempt to fraudulently show that GONZALEZ was present at the location when and where the OC spray was accidently discharged by another officer.

160.    As also previously stated. On November 10, 2015, Circuit Court of Cook County Judge Kathleen J. Kennedy overwhelmingly ruled in favor of Officer GONZALEZ and found that the Administrative Decision suspending officer Gonzalez was; (1) Against the manifest

weight of the evidence; and (2) Violative of Officer Gonzalez's due process rights. The Court also made various other damaging findings against the Police Board, including the fact that:"***there is no factual support for the legal basis of the review by the board***".

161.    Therefore, the Circuit Court of Cook County fully granted Officer Gonzalez's Petition and additionally ruled that: (1) The administrative decision and suspension by the Police Board, which was joined in by the Superintendent, must be reversed, including any alleged violations; and (2) that Remand is not appropriate.

162.    Pursuant to Judge Kennedy's November 10, 2015 ruling and findings as more fully detailed in this complaint, it is evident that the Defendants made and publicized the aforesaid statements without privilege and that the Defendants made the defamatory statements with actual malice, i.e. with knowledge of its falsity or with reckless disregard thereof, and with the intent to injure, debase and defame Plaintiff. In the alternative, Defendants made the defamatory statements without due care to the identification of falsity.

163.    As a direct and proximate result of the publication of the untrue and defamatory statement by the Defendants, Plaintiff has been exposed to public hatred, and ridicule. The statement has been republished by DNAInfo.com over the World Wide Web and has become a source of great embarrassment and humiliation to Plaintiff. Plaintiffs character and reputation for honesty and integrity cannot be fully restored because of the broad publication of the statement. Moreover, his professional standing as a Chicago Police Officer and in the community at large will never be as it was before he was labeled a liar by a leading international magazine, DNA Info and the City of Chicago Police Board. The stigma caused by the defamatory statement will dissuade others from trusting his statements and opinions; and will cause the public to view

him with loathing and disapprobation as everyone considers a dishonest person. Plaintiff has suffered a terrible wrong and injury on account of the defamation and libel per se:

164.     As a direct and proximate result of the Defendants false and defamatory statements, Plaintiff has also suffered financial damages, to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, the Plaintiffs respectfully request the following relief from this court:

> A.  Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and
>
> B.  Any other relief this Court deems appropriate and just.

## `COUNT X
## CONSPIRACY VIA 42 U.S.C 1983

### (ALL PLAINTIFFS v. ALL DEFENDANTS)

165.     PLAINTIFFS reasserts and incorporate herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

166.     As described more fully in this Complaint, DEFENDANTS, acting in concert with other known and unknown CO-CONSPIRATORS, reached an understanding to deprive PLAINTIFF of his Constitutional rights.

167.     PLAINTIFF was deprived of his Constitutional rights in the manner described in this Complaint.

168.     In that furtherance of the Conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity with state actors under the color of law. For example, as fully detailed in this Complaint, in Response to Judge Kennedy's November 10,

2015 ruling in favor of GONZALEZ and the extremely damaging findings against the Defendants, the Defendants and various other parties including the CPD, FOP, and the Department of Law, executed a fraudulent settlement agreement in an attempt to cover-up the unlawful activity against GONZALEZ, protect themselves from any liability, silence GONZALEZ and prevent GONZALEZ from asserting any legal remedies or rights.

169.    That the misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

170.    As a direct and proximate result of the Defendants conspiracy and the aforementioned deprivation of Federal rights, Plaintiff has suffered and will likely continue to suffer injuries including but not limited to severe emotional distress and anguish and damages in an amount to be determined at trial, as more fully described in this Complaint.

171.    Furthermore, as a direct and proximate result of Defendants' conspiracy, GONZALEZ has suffered damages including severe emotional distress and anguish, as is more fully alleged above and damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, the PLAINTIFFS, respectfully requests the following relief from this court:

> A. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and
>
> B. Any other relief this Court deems appropriate and just.

## COUNT XI
## INDEMNIFICATION
(GONZALEZ V. CITY OF CHICAGO AND ALL DEFENDANTS)

172.     Plaintiff reasserts and incorporates herein by reference the allegations made in all paragraphs, inclusive as if though fully set forth herein.

173.     DEFENDANTS were employees and agents of the CITY and acted within the scope of their employment in committing the misconduct described herein and the Defendant CITY, was their principal.

174.     Defendants CITY, is a municipal corporation required to provide indemnity within the meaning of 735 ILCS 10/9-102 for actual damages caused by the DEFENDANTS while acting in the scope of their employment.

175.     Wherefore, the Defendant, CITY OF CHICAGO, is liable to Plaintiff, for an amount which will compensate them for past and future damages, including but not limited to Plaintiff's pay, suffering, emotional distress, and damages proximately caused by the wrongful and unlawful acts of the DEFENDANTS.

176.     The misconduct by the Defendants described herein constitutes willful and wanton disregard for the rights of the PLAINTIFF, was intentionally false, willfully blind to the truth, and in reckless disregard for the truth.

177.     As a direct and proximate result of the aforesaid misconduct the Plaintiff has suffered damages in an amount to be determined at trial.

178.     The aforesaid Defendants' frauds and other misconduct upon the Plaintiffs and the Judiciary for their financial benefit is reprehensible, unconscionable, outrageous and demands significant punitive damages to deter Defendants from further harming the PLAINTIFFS and the public and deceiving the judiciary.

## PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, the Plaintiffs respectfully request the following relief from this court:

A. Enter Judgment in favor of the Plaintiffs and against the Defendants awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities as well as jointly and severally; and

B. Any other relief this Court deems appropriate and just.

**JURY DEMAND**

**Plaintiff demands trial by jury.**

Respectfully submitted,

PLAINTIFF

By: _____

Robert D. Shearer
Once of its Attorneys

Robert D. Shearer
1400 W. Sherwin Ave.
Chicago, IL. 60626
(224) 306-8937

Page **43** of **43**