**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

RICARDO GONZALEZ,                )
                                 )
            Plaintiff,           )
                                 )        No. 16-cv-08012
        v.                       )
                                 )        Judge Andrea R. Wood
CITY OF CHICAGO, et al.,         )
                                 )
            Defendants.          )

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Richard Gonzalez is a police officer employed by Defendant City of Chicago. Gonzalez alleges that he was unlawfully suspended from his job for 30-days following an inadequate complaint and review process. Gonzalez's suspension was eventually reversed by the Circuit Court of Cook County. However, Gonzalez alleges that after the Circuit Court's decision, he was subjected to a campaign of retaliation carried out by various City of Chicago officials, police department superintendents and officers, and the Fraternal Order of Police, Chicago Lodge No. 7 ("FOP"). As a result, Gonzalez has filed this lawsuit, which includes 11 counts and 16 Defendants. Presently before the Court are four separate motions to dismiss Gonzalez's amended complaint filed by the various Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 20, 25, 32, 39.) Following the briefing of the four motions, Gonzalez filed a motion for leave to amend his complaint and add Defendants. (Dkt. No. 73.) For the reasons explained below, the Court grants the motions to dismiss but also grants Gonzalez's motion to amend his complaint.

# BACKGROUND[1]

The origins of this case go back almost a decade. At that time, and at all times pertinent to the amended complaint, Gonzalez was a police officer employed by the City of Chicago. (Am. Compl. ¶ 7, Dkt. No. 6.) Gonzalez's problems began on December 21, 2008, when another Chicago police officer accidentally discharged mace at a restaurant. (*Id.* ¶ 27.) According to Gonzalez, he was in the bathroom of the restaurant at the time the mace was discharged. (*Id.*) Nonetheless, the City of Chicago accused Gonzalez of discharging the mace and initiated a complaint log against him related to the incident. (*Id.* ¶ 28.)[2] Thereafter, the Independent Police Review Authority ("IPRA") assumed responsibility for investigating the matter. (*Id.* ¶ 29.)

Two years later, on March 11, 2011, IPRA recommended that Gonzalez receive a 30-day suspension based on its investigation of the complaint. (*Id.* ¶ 29.) Following the close of IPRA's investigation, the City of Chicago Police Board ("Police Board") took over the matter. On November 21, 2013, the Police Board conducted a closed hearing regarding the mace incident. (*Id.* ¶ 30.) Eventually, the Police Board issued a "Findings and Decisions" document, signed by Defendant Max Caproni, Executive Director of the Police Board, sustaining the 30-day suspension and all alleged rule violations by Gonzalez. (*Id.* ¶ 30.) The Police Board published its findings on the City of Chicago website. (*Id.* ¶ 31.) Then, on December 18, 2013, an online news website, DNAInfo.com, picked up the story and published an article presenting the Board's findings against Gonzalez. (*Id.* ¶ 32.) Gonzalez, however, did not receive a copy of the Police Board's findings until December 31, 2013. (*Id.* ¶ 34.)

---

[1] For the purposes of Defendants' motions to dismiss, the Court accepts as true all well-pleaded facts and views them in the light most favorable to Gonzalez. *See, e.g.*, *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016).

[2] It is unclear from Gonzalez's amended complaint why the City of Chicago falsely accused him.

Over five years after the mace incident, on January 16, 2014, Gonzalez was personally served with a 30-day suspension notification ordered by Defendant Superintendent Garry McCarthy. (*Id.* ¶ 35.) Gonzalez sought and received assistance from FOP in challenging the suspension. (*Id.* ¶ 39.) FOP drafted and filed a petition for administrative review of Gonzalez's 30-day suspension. (*Id.*) But in reviewing FOP's petition, Gonzalez noticed an erroneous statement regarding the date on which Superintendent McCarthy ordered the suspension. (*Id.* ¶ 39.) Gonzalez alerted FOP to the erroneous statement but it refused to amend the petition. (*Id.* ¶ 41.) Because of this disagreement with FOP, Gonzalez decided to retain private counsel, and an amended petition was filed on February 14, 2014. (*Id.* ¶ 42.) Gonzalez named the Police Board and Superintendent McCarthy as defendants in the amended petition. (City Defs.'s Mot. to Dismiss, Ex. 2, Dkt. No. 26-1.) In response, Defendants attempted to dismiss the administrative proceedings based on what Gonzalez characterizes as erroneous and misleading arguments. (Am. Compl. ¶ 51, Dkt. No. 6.) Gonzalez also claims that, throughout the course of the state court litigation, Defendants committed various egregious and malicious acts, including submitting perjured testimony and backdated documents, intentionally filing an incomplete record, and misrepresenting the facts. (*Id.* ¶ 53.)

The Circuit Court issued its ruling on November 10, 2015. (*Id.* ¶ 54.) The Circuit Court held that because Defendants failed to fully comply with the required procedures for instituting a 30-day suspension, the suspension must be reversed as a violation of Gonzalez's due process rights. (*Id.* ¶ 56.) Neither side appealed the Circuit Court's findings. (*Id.* ¶ 57.) After the ruling, Defendants sent Gonzalez a settlement agreement letter. (*Id.* ¶ 58.) The settlement agreement proposed to resolve a grievance filed by Gonzalez and reduce Gonzalez's 30-day suspension to 15 days, while also removing certain violations from his record. (*Id.* ¶ 61.) The settlement

agreement was entered into between FOP and the City of Chicago Police Department. (*Id.* ¶ 62.)

According to Gonzalez, however, the grievance cited in the settlement letter had been withdrawn

on October 23, 2015 and only resurrected after the Circuit Court's decision reversing Gonzalez's

suspension. (*Id.* ¶ 60.) As a result, Gonzalez considers the settlement fraudulent.

Beyond the alleged constitutional and other legal violations directly related to the 30-day

suspension, Gonzalez also claims to have been subjected to a campaign of retaliation due to his

decision to challenge the Police Board's punishment. The first alleged instance of retaliation

actually occurred before the Circuit Court issued its decision when, on May 13, 2015, Gonzalez

met with Sergeant Don DeVito of the Internal Affairs Division at police headquarters. (*Id.* ¶ 63.)

The amended complaint does not detail what exactly was discussed during the meeting, but at

some point DeVito became angry and told Gonzalez, "I know where you're going with this" and

threatened "You're Done." (*Id.*) DeVito then had Gonzalez escorted out of the headquarters. (*Id.*)

The following day, Gonzalez emailed DeVito about the incident. (*Id.* ¶ 63.) DeVito never

responded to this email. (*Id.*)

Six months later, on the morning of November 15, 2015, just five days after the Circuit

Court reversed Gonzalez's suspension, Gonzalez again went to police headquarters, this time to

meet with a case worker in the medical section. (*Id.* ¶ 78.) Gonzalez's aunt accompanied him on

the visit. (*Id.* ¶ 78.) While he was waiting for his appointment, Gonzalez overheard the medical

section worker talking over the phone and telling an unknown person, "He is here. You can see

him after he is done." (*Id.* ¶ 79.) Shortly afterwards, Sergeant DeVito and another tall male

arrived. DeVito and the other unknown male positioned themselves such that they were blocking

Gonzalez's exit. (*Id.* ¶ 80.) In response to DeVito's presence, Gonzalez became fearful for

himself and his aunt, and began to experience shortness of breath. (*Id.* ¶ 82.) Gonzalez attempted

to exit the waiting room, but DeVito and the other male continued to block the doorway. (*Id.* ¶ 83.) DeVito told Gonzalez, "no, no, no" and grabbed him by the lower arm. (*Id.*) Although Gonzalez was eventually able to exit the room, DeVito followed him into the main lobby where Gonzalez heard someone say "I will just lock you up." (*Id.* ¶ 84.)

Sergeant DeVito was not the only officer who is alleged to have targeted Gonzalez for pushing back against the Police Board. Gonzalez also claims to have been attacked by Sergeant Andres Zayas on December 14, 2015 while attending a medical appointment at Rush Hospital. (*Id.* ¶ 91.) On that day, Gonzalez noticed an unknown man staring at him while he checked in with hospital desk personnel. The man not only stared at Gonzalez, but he also blocked the hospital exit. (*Id.* ¶ 92.) The man told Gonzalez that he was Sergeant Zayas, and Gonzalez immediately starting experiencing heart palpitations, shortness of breath, and anxiety. (*Id.* ¶¶ 92, 93.) Because Gonzalez felt threatened and feared for his life, he attempted to walk around Zayas and leave the area. (*Id.* ¶ 93.) Zayas raised his hand to make contact with Gonzalez and, in response, Gonzalez screamed, "stop threatening me." (*Id.* ¶ 93.) Afterwards, Gonzalez was able to exit the building. (*Id.*) Gonzalez immediately went to the emergency room at Northwestern Memorial Hospital, where he was informed that due to his mental state, the hospital could not release him without prior approval from his psychologist. (*Id.* ¶ 94.) After contacting his psychologist, Gonzalez was released. (*Id.* ¶ 95.)

In addition to these specific instances of alleged retaliation, Gonzalez also claims to have been harassed by the police department more generally. Indeed, Gonzalez contends that certain members of the Chicago Police Department continue to harass him, including by making late-night visits to his home on January 8, 2016 and February 18, 2016. (*Id.* ¶ 97.) Gonzalez has also

been harassed orally and in writing. (*Id.* ¶ 98.) Finally, on January 1, 2016, the City of Chicago stopped paying Gonzalez. (*Id.* ¶ 96.)

In the midst of this retaliation campaign, Gonzalez sought medical attention for the emotional distress caused by the alleged harassment. Gonzalez started seeing a psychologist after a medical case worker noticed his distressed mental state and recommended he seek help. (*Id.* ¶¶ 66, 67.) After the medical case worker suggested mental health treatment, Gonzalez called his primary care doctor regarding his stress and anxiety, and the doctor prescribed medication to treat those symptoms. (*Id.* ¶ 68.) On August 20, 2015, Gonzalez began therapy with a psychologist, who Gonzalez continues to see. (*Id.* ¶ 69.) Pursuant to a recommendation from his psychologist, Gonzalez attended a psychiatric evaluation on January 4, 2016. (*Id.* ¶ 99.) The psychiatrist prescribed Gonzalez additional medication, which he continues to take. (*Id.* ¶ 100.)

At some point, Gonzalez was fired from his position as police officer. It is unclear from the amended complaint how exactly Gonzalez was fired but, on April 14, 2016, Gonzalez turned in his badge and identification card to the Chicago Police Department. (*Id.* ¶ 101.) This lawsuit followed on August 10, 2016.

As mentioned above, Gonzalez's amended complaint (which is currently the operative complaint) includes claims against 16 different Defendants. Those Defendants have organized themselves into four groups, each represented by separate counsel and pursuing its own motion to dismiss. Those four groups are as follows: (1) the City of Chicago, Caproni, and IPRA Investigator Lakenya White (together, "City Defendants");[3] (2) Superintendent McCarthy, Former Interim Superintendent John Escalante, Superintendent Eddie Johnson, Chief Juan

---

[3] Defendants Ilana Rosenzweig and Nathaniel Freeman are also parties to this lawsuit and employees of IPRA. Summonses were issued to these two Defendants but they have not appeared in the case.

Rivera, Chief Eugene Williams, Lieutenant Jacqueline Ellison, and Civilian Director of Human Resources Division Donald O'Neill (together, "Officer Defendants");[4] (3) FOP and First Vice President of the FOP Ray Casiano (together, "FOP Defendants"); and (4) Sergeant DeVito and Sergeant Zayas.

## DISCUSSION

### I.     Res Judicata

Defendants first argue that the claims asserted by Gonzalez are barred by the doctrine of *res judicata*. Under that doctrine, "when a final judgment has been entered on the merits of a case, it is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Highway J Citizens Grp. v. U.S. Dep't of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006) (quoting *Nevada v. United States,* 463 U.S. 110, 129–30 (1983)). Although generally "it is incorrect to grant a motion to dismiss under Rule 12(b)(6) on the basis of an affirmative defense" such as *res judicata*, *see McCready v. eBay, Inc.*, 453 F.3d 882, 892 n.2 (7th Cir. 2006), an exception to this rule exists when a plaintiff "admit[s] all the ingredients of an impenetrable defense" in his complaint and thereby pleads himself out of court. *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004).

Because an Illinois state court rendered the order at issue here, this Court applies Illinois law to determine whether *res judicata* bars Gonzalez's claims. *See Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 560 (7th Cir. 1999). Under Illinois law, the doctrine of *res judicata* applies

---

[4] Gonzalez also has named an unknown officer as a Defendant. This party appears to have been identified as Marco Tirado after the briefing for the motions to dismiss was complete. (*See* Mot. to File Am. Compl., Ex. 1 at 6, Dkt. No. 73-1.) Tirado does not appear to have been served yet.

when there is "(1) a final judgment on the merits by a court of competent jurisdiction; (2) an identity of the causes of action; and (3) an identity of parties or their privies." *See Perkins v. Cty. of Cook*, No. 13-cv-02430, 2014 WL 4783015, at *3 (N.D. Ill. Sept. 24, 2014); *see also Rockford Mut. Ins. Co. v. Amerisure Ins. Co. and Michigan Mut. Ins. Co.,* 925 F.2d 193, 195 (7th Cir. 1991). Here, only the second two elements are at issue. In addition, the party against whom *res judicata* is invoked must have had a "full and fair" opportunity to litigate the claim in the prior suit. *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007).

### A. Same Causes of Action

To determine whether two causes of action are the same, Illinois courts apply a "transactional test" under which "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 893 (Ill. 1998). The test is "pragmatic" as it focuses on the facts underlying the different claims while disregarding "the number of substantive theories, the variant forms of relief flowing from those theories, and the variations in evidence needed to support the theories." *Garcia v. Vill. of Mount Prospect*, 360 F.3d 630, 637 (7th Cir. 2004). In other words, Illinois courts do not "require the same evidence or an identical theory of relief" in order for the separate claims to be considered the same cause of action. *Cooney v. Rossiter*, 986 N.E.2d 618, 622 (Ill. 2012).

The issue here is whether Gonzalez's state and federal claims arise from the same group of operative facts as his Circuit Court case. In his petition before the Circuit Court, Gonzalez challenged the validity of the Police Board decision, alleging that it was against the manifest weight of the evidence, violated his due process rights, and was otherwise capricious and

unreasonable. In the Circuit Court proceeding, Gonzalez solely sought review and reversal of the Police Board's suspension decision. Here, in contrast, Gonzalez brings federal claims pursuant to 42 U.S.C. § 1983, specifically alleging that the suspension decision violated his constitutional due process rights and accusing Defendants of conspiracy. Those are the only federal claims Gonzalez asserts in his amended complaint—Gonzalez's remaining claims arise under state law.

While Gonzalez raises claims in this federal case that were not raised before the Circuit Court, both the administrative appeal before the Circuit Court and the instant lawsuit question the validity of the Police Board's suspension decision. Furthermore, Gonzalez's claims related to the 30-day suspension that are raised for the first time before this Court arise from the same group of facts as his previous claims—namely, the process leading up to his suspension. Therefore, the administrative appeal and the federal causes of action arise from the same core of operative facts.

### B.    Same Parties

There is also an identity of parties or their privies with respect to the administrative appeal and this federal case. "A determination regarding whether privity exists is to be conducted on a case-by-case basis." *Harrison v. Deere & Co.*, 533 F. App'x 644, 649 (7th Cir. 2013) (quoting *Agolf, LLC v. Vill. of Arlington Heights,* 946 N.E.2d 1123, 1132 (Ill. App. Ct. 2011)). "[P]rivity may exist where a person is so identified in interest with another that he represents the same legal right." *Jackson v. Callan Pub., Inc.*, 826 N.E.2d 413, 428 (Ill. App. Ct. 2005). For example, interests are often aligned when one party is an agent of the other. *See Garcia v. Vill. of Mount Prospect*, 360 F.3d 630, 636 (7th Cir. 2004). Therefore, as agents of their employer, an employee may be in privity with their employer. *See Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235 n.6 (7th Cir. 1986). Here, the issue is whether Gonzalez is bound by the previous

decision of the Circuit Court. As a consequence, the Court need only consider whether his rights were adequately protected in the prior litigation. Because Gonzalez was the petitioner in the Circuit Court case and is the plaintiff here, meaning the same parties are involved in both proceedings, the Court finds that the privity element is satisfied.

### C.  Full and Fair Opportunity to Litigate

The Court also must consider whether Gonzalez had a full and fair opportunity to litigate his claims in the earlier action. "As a corollary to the transactional rule [of *res judicata*], Illinois adopted the doctrine of merger and bar which precludes the sequential pursuit not only of claims actually litigated, but of those that could have been litigated." *Garcia*, 360 F.3d at 639. Illinois state courts exercise jurisdiction over constitutional claims brought pursuant to § 1983. *See Manley v. City of Chicago*, 236 F.3d 392, 397 (7th Cir. 2001) ("Illinois allows a plaintiff to join constitutional claims under § 1983 with a request for administrative review."). Furthermore, the two federal claims that Gonzalez asserts here—for violation of his due process rights and conspiracy to violate those rights—are based on conduct that occurred ***before*** Gonzalez filed his administrative petition with the Circuit Court. Therefore, Gonzalez had the opportunity and ability to join his § 1983 claims with his administrative appeal of the Police Board's decision.

Consequently, all of the *res judicata* requirements are met with respect to the § 1983 claims, and Gonzalez is barred from bringing those causes of action in federal court. With respect to his state law claims, however, those claims are either premised on actions that occurred after Gonzalez filed his petition for administrative review or potentially constitute a continuing violation. As a result, it is not clear that Gonzalez had a full and fair opportunity to

litigate the state law claims in Circuit Court. Therefore, those claims are not barred by *res judicata* and the Court analyzes them more fully below.[5]

## II.     Statute of Limitations

The City Defendants, Officer Defendants, and Sergeant DeVito argue that Gonzalez's state law claims for abuse of process (Count III), emotional distress (Counts VII and VIII), defamation and libel (Count IX), and assault and battery (Counts V) should be dismissed as untimely. As with the affirmative defense of *res judicata*, "[a]lthough generally a plaintiff is not required to plead around an affirmative defense . . . the district court can dismiss a complaint as untimely if the plaintiff has admitted all the elements of the affirmative defense." *Khan v. United States*, 808 F.3d 1169, 1172 (7th Cir. 2015); *see also Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674–75 (7th Cir. 2009) ("[D]ismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness."). Under Illinois law, the statute of limitations for tort claims against public employees is one year. 745 ILCS 10/8-101(a).

### A.     Intentional/Negligent Infliction of Emotional Distress

Gonzalez asserts claims against all Defendants for intentional infliction of emotional distress (Count VII) and negligent infliction of emotional distress (Count VIII). Both intentional and negligent infliction of emotional distress claims can be continuing torts for which the clock

---

[5] The Court's subject-matter jurisdiction over this matter was based on the presence of a federal question. Because Gonzalez's § 1983 due process and conspiracy claims are dismissed with prejudice as barred by *res judicata*, the amended complaint no longer presents a basis for federal-question jurisdiction and normally the Court would not exercise supplemental jurisdiction over any surviving state law claims. However, Gonzalez has filed a motion for leave to file a second amended complaint. (Dkt. No. 73.) In the proposed second amended complaint attached to his motion, Gonzalez purports to assert additional federal law claims that would potentially provide a basis for this Court's subject-matter jurisdiction. Gonzalez's request to file a second amended complaint will be granted. In anticipation of Gonzalez filing that complaint, the Court deems it prudent to consider the merits of Defendants' motions to dismiss the existing state law claims.

begins to run only when the last injurious act occurs. *See Brown v. Kouretsos*, No. 15-cv-11076, 2016 WL 3269000, at *3 (N.D. Ill. June 15, 2016). The Seventh Circuit has explained that "the continuing violation concept is reserved for theories of liability that depend on the cumulative impact of numerous individual acts, none of which is necessarily actionable in itself." *Reese v. Ice Cream Specialties, Inc.*, 347 F.3d 1007, 1012 (7th Cir. 2003). Although Gonzalez does not state his argument clearly, he seems to be claiming a continuing violation with respect to his intentional and negligent infliction of emotional distress claims. But the start and end-dates for Gonzalez's alleged emotional distress is unclear from the amended complaint. Instead, Gonzalez merely alleges that Defendants' wrongful acts, broadly, caused him severe emotional distress and anguish. Notably, the wrongful acts alleged in the amended complaint span ten years. Since the Court views all facts in the light most favorable to Gonzalez, the Court views the amended complaint as alleging infliction of emotional distress throughout the ten-year period relevant to the amended complaint. In other words, Gonzalez has alleged an ongoing campaign of continuous harassment that stretched over a ten-year period, with each individual act building off the last one and none necessarily actionable on its own. This harassment continued at least through February 18, 2016, when Chicago police made an unexpected, late-night visit to Gonzalez's home. Because Gonzalez has sufficiently pleaded a continuing violation as of February 2016 for his intentional and negligent infliction claims, those claims fall within the limitations period.

### B. Defamation and Libel

Gonzalez seeks to hold the City Defendants and the Officer Defendants liable for defamation and libel (Count IX). Generally, the statute of limitations for libel and defamation causes of action begins to run on the date when the challenged material is published. *See Tom*

*Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 334 N.E.2d 160, 161 (Ill. 1975) (finding that the "cause of action accrues and the statute of limitation begins to run on the date of publication of the defamatory material"). According to Gonzalez, the Police Board issued a "Findings and Decisions" document sustaining his 30-day suspension on November 21, 2013. Then, on December 18, 2013, the website DNAinfo.com published an article presenting the details of the suspension. Even assuming that Defendants were somehow responsible for the online article being published, the limitations period for Gonzalez's defamation and libel claim began to run on the date the article was published. Thus, to satisfy the statute of limitations, Gonzalez had to file his claim by December 18, 2014. Gonzalez did not file his claim until August 10, 2016, and thus it is time-barred.

### C.    Assault and Battery

Gonzalez also asserts an assault and battery claim against Defendant DeVito. This claim relates to two incidents: one on May 13, 2015 and one on November 4, 2015. Based on those two separate incidents, Gonzalez argues that DeVito's conduct was part of a continuing violation and therefore any limitations period did not begin to run until the date of the last injury.

As noted above, "[t]he continuing violation doctrine acts as a defense to the statute of limitations, by delaying its accrual or start date." *Kovacs v. United States*, 614 F.3d 666, 676 (7th Cir. 2010) (internal citation omitted). The doctrine applies when "a tort involves a continued repeated injury" in which case "the limitation period does not begin until the date of the last injury or when the tortious act ceased." *Field v. First Nat'l Bank of Harrisburg*, 619 N.E.2d 1296, 1299 (Ill. App. Ct. 1993). The doctrine does not apply to "a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing." *Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434, 442 (7th Cir. 2005).

In contrast to his emotional distress claims, Gonzalez's assault and battery claims against DeVito involve only two incidents, each of which was significant enough on its own to support a cause of action. Gonzalez had all of the information he needed to file an assault claim against DeVito after the May 13, 2015 incident. Furthermore, far from constituting a continuous series of acts, the two encounters with DeVito were separated by six months. The Court "will only use the continuing violation doctrine to make time-barred conduct actionable if it would have been unreasonable for Plaintiffs to file suit when the time-barred conduct occurred." *Fairley v. Andrews*, 300 F. Supp. 2d 660, 670 (N.D. Ill. 2004). As such, Gonzalez is barred from bringing an untimely claim related to the May 13, 2015 incident. But since the claim related to the separate November 4, 2015 incident was timely filed, Gonzalez may pursue the claim of assault and battery related to that incident.

### III. Remaining Substantive Claims

The Court next turns to the remaining claims that are not barred by either *res judicata* or the statute of limitations, and considers Defendants' argument that Gonzalez has not stated claims for which he is entitled to relief. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 547 (2007). While the complaint need not include detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Id.* at 555. The plaintiff must "'plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

### A.    Fraud

Gonzalez brings a fraud claim (Count IV) against the City Defendants and the FOP Defendants. According to the amended complaint, Defendants executed a fraudulent settlement agreement in an attempt to cover up the unlawful activity directed toward Gonzalez. To plead common law fraud in Illinois, a plaintiff must allege the following elements: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996). In addition, in federal court, the heightened pleading standard under Federal Rule of Civil Procedure 9(b) applies to fraud claims. *See Slaney v. the Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 599 (7th Cir. 2001). Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

Here, Gonzalez alleges that the City Defendants and the FOP Defendants improperly attempted to settle his grievance by offering him a reduced suspension period. But according to Gonzalez, his grievance previously had been withdrawn and therefore could not properly form the basis of a settlement agreement. As such, Gonzalez alleges that the use of the withdrawn grievance as part of the settlement process was fraudulent. Even accepting these facts as true, as the Court must at the motion to dismiss stage, Gonzalez fails to plead that he relied upon the truth of Defendants' erroneous statement or that damages resulted from his reliance. Further, it is not clear that resurrecting a withdrawn grievance constitutes a "false statement." Because Gonzalez has not adequately alleged the elements for fraud, this claim is dismissed without prejudice.

**B.** **Intentional and Negligent Infliction of Emotional Distress**

Gonzalez also asserts intentional and negligent infliction of emotional distress claims against all Defendants (Counts VII and VIII). The Court first considers the intentional infliction of emotional distress claim. Under Illinois law, "[t]he elements of intentional infliction of emotional distress are (1) extreme and outrageous conduct by defendant, (2) intent to inflict or knowledge of a high degree of probability that conduct would cause severe emotional distress, and (3) severe emotional distress in fact." *Jimenez v. Thompson Steel Co.*, 264 F. Supp. 2d 693, 696 (N.D. Ill. 2003). "[T]he tort does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988) (quoting Restatement (Second) of Torts § 46, comment d at 73 (1965)). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976). Additionally, the resultant emotional distress must be so severe that no reasonable person could be expected to endure it. *See McGrath*, 533 N.E.2d at 809.

In Illinois, the bar for extreme and outrageous conduct is especially high in the employment context. This is due to the concern that "if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action." *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 867 (Ill. App. Ct. 2000). Accordingly, courts "have limited recovery to cases in which the employer's conduct has been truly egregious." *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 568 (7th Cir. 1997). For example, the Illinois courts' high standard is met when an employer "threaten[s] to exercise their

16

power to coerce plaintiffs into doing something they would not otherwise do," such as an illegal act. *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 867 (Ill. App. Ct. 2000).

In this case, Gonzalez has not sufficiently alleged extreme and outrageous conduct that would give rise to an intentional infliction of emotional distress claim. Overall, Gonzalez alleges a campaign of harassment that included falsely accusing him of setting off mace in a restaurant, unjustly suspending him, and retaliatory conduct by Officers DeVito and Zayas. However, as currently pleaded, the conduct described by Gonzalez does not rise to the level of extreme and outrageous behavior that could sustain a claim for intentional infliction of emotional distress in the employment context. *See Welsh v. Commonwealth Edison Co.*, 713 N.E.2d 679, 684 (Ill. App. Ct. 1999) (dismissing intentional infliction of emotional distress claim as insufficient to state a claim where plaintiff claims she was demoted, transferred, forced to perform demeaning and humiliating tasks, harassed, intimidated, and threatened with termination, all in retaliation for voicing safety concerns); *c.f. Gilardi v. Schroeder*, 833 F.2d 1226, 1234 (7th Cir. 1986) (finding intentional infliction of emotional distress where an employer drugged and raped and then discharged the employee); *Everly v. United Parcel Serv., Inc.*, No. 89-cv-01712, 1989 WL 81961, at *3 (N.D. Ill. July 13, 1989) (denying motion to dismiss intentional infliction of emotional distress claim where the plaintiff alleged her employer harassed her over several years, including waiting over 10 hours to give plaintiff a phone message regarding the death of her father, failing to give plaintiff a phone message about the molestation of her daughter, and refusing to allow plaintiff to seek medical attention after she spilled acid on her body). For example, Gonzalez alleges that members of the Chicago Police Department unexpectedly showed up at his home late at night on at least two occasions. Gonzalez does not, however, describe what exactly the officers did when they arrived at his house that would constitute

extreme or outrageous behavior. If Gonzalez chooses to re-plead his intentional infliction of emotional distress claim in a second amended complaint, he should allege sufficient facts about what outrageous conduct occurred and who engaged in the conduct, as well as that they intended to cause him emotional distress. Gonzalez may not simply group all Defendants together and accuse them all, broadly, of intentionally inflicting emotional distress, as he has done in his current complaint.

As for the negligent infliction of emotional distress claim, to succeed Gonzalez must allege a "duty, as well as a breach that proximately caused the claimant an injury." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 703 (7th Cir. 2009). Under Illinois law, the existence of a duty is a question of law to be determined by the Court. *See Gouge v. Cent. Illinois Pub. Serv. Co.*, 582 N.E.2d 108, 112 (Ill. 1991). "In determining whether to impose a duty upon a defendant, a court will look at various policy considerations, such as the likelihood of harm, the gravity of the injury, the burden of guarding against the injury, and the relationship between the parties." *Corgan v. Muehling*, 574 N.E.2d 602, 606 (Ill. 1991).

Gonzalez has not alleged in his amended complaint or argued in his briefing any reason why Defendants owed him a duty. A relationship between two individuals may give rise to a duty to avoid negligent infliction of emotional distress when the defendant's relationship "carries with it a foreseeable, and unreasonable, risk of causing emotional or mental harm." *Corgan*, 574 N.E.2d at 606. In *Corgan*, for example, the Court held that a duty existed between a qualified psychologist and his patient. *Id.* at 606. In that case, the doctor "held himself out as a qualified psychologist, able to render counseling and advice," the patient went to the doctor "for the purpose of obtaining such counseling," the doctor had sex with the patient during treatment, and the doctor failed "to recognize or deal with the psychotherapeutic phenomenon of transference."

*Id.* at 606–07. As currently pleaded here, the amended complaint alleges no basis from which the Court could find that any similarly-substantial relationship exists between any Defendant and Gonzalez such as would warrant imposition of a duty.

Indeed, Illinois law indicates that there is no such duty for employers to avoid negligently inflicting emotional distress upon their employees. *See Brown v. Kouretsos*, No. 15-cv-11076, 2016 WL 3269000, at *6 (N.D. Ill. June 15, 2016). Further, Gonzalez has not cited any case law (nor has the Court found any) supporting the proposition that coworkers have a duty to avoid negligent infliction of emotional distress. As for IPRA, the complaint indicates that their employees had no relationship with Gonzalez and merely investigated the misconduct allegations from a distance. Not only did Gonzalez fail to allege *any* sort of relationship between himself and IPRA but he also fails to cite any caselaw suggesting that IPRA owes him a duty.

This leaves only Gonzalez's relationship with FOP's counsel as potentially establishing a duty. FOP's counsel briefly represented Gonzalez by writing and filing the initial petition for administrative review of his suspension. Gonzalez alleges that FOP counsel included the following false statement in the petition: "On April 19, 2012, Garry McCarthy, Superintendent of Police, ordered the suspension of Plaintiff, Ricardo Gonzalez, for thirty (30) days, alleging violations of certain rules of the Chicago Police Department by the Plaintiff." (Am. Compl. ¶ 40, Dkt. No. 6.) Even if counsel's actions can be imputed to FOP generally, and even if a duty was owed during the brief period of its representation, FOP counsel did not breach this duty by misstating a relatively insignificant and non-inflammatory fact in Gonzalez's petition.

In sum, Gonzalez has failed to allege that any Defendant owed him a duty based on a relationship with him. Instead of specifying the duty owed by each individual Defendant, Gonzalez has grouped all Defendants together and accused them all of negligently inflicting

emotional distress. Such a broad, undifferentiated accusation is insufficient to state a claim.

For these reasons, Gonzalez's intentional and negligent infliction of emotional distress claims are dismissed without prejudice.

## C. Abuse of Process

Gonzalez asserts an abuse of process claim (Count III), alleging that certain Defendants instituted proceedings against him for ulterior motives. To plead a cause of action for abuse of process under Illinois law, a plaintiff must allege: "(1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings." *Kumar v. Bornstein*, 820 N.E.2d 1167, 1173 (Ill. App. Ct. 2004). Although Gonzalez has alleged a campaign of harassment that included the unjust institution of judicial proceedings, nowhere does he allege a motive or reason for those actions. Indeed, it is entirely unclear from the amended complaint why Gonzalez believes that Defendants pinned the mace incident on him when he was, in fact, innocent; nor does Gonzalez allege facts to plausibly plead the existence of an ulterior motive or purpose. Gonzalez's abuse of process claim is thus dismissed without prejudice as well.

## D. Malicious Prosecution

For his malicious prosecution claim (Count II), Gonzalez alleges that certain Defendants instituted judicial proceedings against him maliciously and with no probable cause. "A malicious prosecution action is brought to recover damages suffered by one against whom a suit has been filed maliciously and without probable cause." *Miller v. Rosenberg*, 749 N.E.2d 946, 951–52 (Ill. 2001). In Illinois, a malicious prosecution claim based upon a civil proceeding has five elements: (1) the commencement or continuance of an original judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for

such proceeding; (4) the presence of malice; and (5) special damages. *Grundhoefer v. Sorin*, 20 N.E.3d 775, 780 (Ill. App. Ct. 2014). "Probable cause in a malicious prosecution action is a state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged. *Id.* (internal quotation marks omitted).

Gonzalez alleges that certain City Defendants and Officer Defendants are liable for malicious prosecution based on their participation in the Circuit Court proceeding. But Gonzalez was the one who petitioned the Circuit Court to review his case. Therefore, how could Defendants be responsible for commencing or continuing the judicial proceedings? Further, Gonzalez has cited no caselaw indicating that defending a petition for judicial review of an administrative decision constitutes malicious prosecution. Without any allegations or caselaw indicating that Defendants' conduct constitutes the commencement or continuance of a civil proceeding, Gonzalez has failed to plead a claim for malicious prosecution.[6]

## IV.     Remaining Claims

After considering the arguments for dismissal raised in Defendants' various motions, Gonzalez's assault and battery claim against DeVito based on the November 4, 2015 incident and Gonzalez's assault claim against Zayas survive. Gonzalez also asserts a claim for indemnification (Count XI), purportedly against all Defendants. Gonzalez cites 745 ILCS 10/9-102 to support this count. The statute states:

> A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article.

---

[6] To the extent Gonzalez attempts to resuscitate this claim by instead asserting that the institution of the original complaint before IPRA and the Police Board constitutes malicious prosecution, the Court notes that this claim is barred by *res judicata* as a matter that should have been raised before the Circuit Court.

745 ILCS 10/9-102. This statute does not provide for indemnification from any entity other than a local public entity, however. Accordingly, the indemnification claim only applies to the City of Chicago.

## V.     Motion to File Second Amended Complaint

Finally, Gonzalez seeks leave to file a Second Amended Complaint. Gonzalez alleges in his motion to amend that new facts have arisen. Specifically, he asserts that he was sent a fraudulent letter on March 30, 2017 stating that his employment with the Chicago Police Department was terminated on December 15, 2017 and accepting Gonzalez's resignation on March 16, 2017. The Court grants Gonzalez's motion to amend his complaint. However, as the proposed second amended complaint attached to Gonzalez's motion does not remedy any of the deficiencies described above—but rather simply tacks on new allegedly retaliatory behavior to the First Amended Complaint—the Court will not accept the currently tendered complaint at this time. Instead, Gonzalez is granted leave to file a second amended complaint that takes into account this Court's ruling regarding the amended complaint.

## CONCLUSION

For the reasons explained above, Defendants' motions to dismiss (Dkt. Nos. 20, 25, 32, 39) are granted. Specifically, the federal due process (Count I) and conspiracy (X) claims are dismissed with prejudice as barred by the doctrine of *res judicata*. The state law claims for defamation and libel (Count IX) and assault and battery claims based on the May 13, 2015 incident involving Defendant DeVito (in Count V) are also dismissed with prejudice as time-barred. Meanwhile, Gonzalez's state law claims for malicious prosecution (Count II), abuse of process (Count III), fraud (Count IV), intentional infliction of emotional distress (Count VII), and negligent infliction of emotional distress (Count VIII) are dismissed without prejudice for

failure to state a claim. The remaining assault and battery claim based on the November 4, 2015 incident involving Defendant DeVito (in Count V) and the assault claim (Count VI) will not be dismissed at this time. Instead, the Court will continue to assert supplemental jurisdiction over those state law claims pending the filing of Gonzalez's second amended complaint.

On the preceding point, Gonzalez's motion to file an amended complaint (Dkt. No. 73) is granted but the Court will not accept the proposed second amended complaint attached to the motion at this time. In light of the instant ruling with respect to the viability of the amended complaint, it is clear that the proposed second amended complaint is deficient in several respects. Accordingly, the Court grants Gonzalez leave to file a second amended complaint that takes into account this Memorandum Opinion and Order and, of course, that demonstrates a basis for this Court to assert subject-matter jurisdiction over Gonzalez's lawsuit. If Gonzalez fails to file a second amended complaint that includes a basis for the Court to exercise subject-matter jurisdiction, the case will be dismissed in its entirety and Gonzalez will have one year to refile in state court. See 735 ILCS 5/13-217; *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008).

ENTERED:

Dated: March 30, 2018

Andrea R. Wood
United States District Judge