**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RICARDO GONZALEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 16-cv-08012 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Ricardo Gonzalez was a police officer employed by Defendant City of Chicago ("City") until his termination in March 2017. After successfully challenging a previous disciplinary action taken against him, Gonzalez claims that he faced retaliatory harassment carried out by various City officials, police department superintendents and officers, and the Fraternal Order of Police, Chicago Lodge No. 7 ("FOP"). As a result, Gonzalez brings the present 16-count lawsuit against 21 Defendants. (Second Am. Compl. ("SAC"), Dkt. No. 170.) Now, Defendants have filed four separate motions to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) that would collectively dispose of the entire action. (Dkt. Nos. 188–90, 192.) Instead of responding to Defendants' motions, Gonzalez filed a motion for entry of default judgment under Federal Rule of Civil Procedure 37, arguing that Defendants willfully destroyed or lost material evidence. (Dkt. No. 201) Gonzalez claims that it was necessary for him to obtain that evidence to plead his claims adequately. For the reasons that follow, Gonzalez's motion for entry of default judgment is denied and Defendants' motions to dismiss are granted.

**BACKGROUND**

## I.      Factual Allegations

For the purposes of the motions to dismiss, the Court accepts all well-pleaded facts in the

SAC as true and views the facts in the light most favorable to Gonzalez as the non-moving party.

*Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

### A.      Disciplinary Proceedings

Gonzalez began working as a police officer with the Chicago Police Department ("CPD")

in 2003. (SAC ¶ 36, Dkt. No. 170.) For many years, Gonzalez served without any notable

disciplinary issues. (*Id.*) However, on December 21, 2008, Gonzalez was involved in an incident

at a restaurant that culminated in the accidental discharge of mace spray by another police officer.

(*Id.* ¶¶ 3, 37.) At the time of the accidental discharge, Gonzalez claims to have been in the

restaurant's bathroom. (*Id.*) Even though Gonzalez was not the officer who discharged the mace,

the Independent Police Review Authority ("IPRA") named him in a complaint alleging

misconduct. On or around March 11, 2011, the IPRA completed its investigation of the incident

and found Gonzalez to be at fault. (*Id.* ¶ 40.) In addition, it found Gonzalez had violated Rule 14,

which prohibits a police officer from making false statements or filing false police reports. (*Id.*

¶ 42.) The IPRA recommended that Gonzalez be suspended for 30 days. (*Id.* ¶ 40.)

After concluding its investigation, the IPRA transferred Gonzalez's complaint to the City

of Chicago Police Board ("Police Board"). (*Id.* ¶ 41.) On November 21, 2013, the Police Board

conducted a closed hearing regarding the mace incident. (*Id.* ¶ 46.) Ultimately, the Police Board

sustained all the rule violations committed by Gonzalez and upheld his 30-day suspension. (*Id.*)

Gonzalez did not learn of his suspension until January 16, 2014, when he received a notice from

Defendant CPD Superintendent Garry McCarthy. (*Id.* ¶ 50.)

Upon learning of his suspension, Gonzalez sought assistance from Defendant FOP in filing a petition for administrative review of his suspension. (*Id.* ¶ 52.) After noticing a false statement in the petition, Gonzalez notified the FOP of the defect and demanded its correction. (*Id.* ¶¶ 55–56.) The FOP refused to amend the petition. (*Id.* ¶ 56.) In light of the FOP's refusal, Gonzalez retained private counsel to file an amended petition for administrative review. (*Id.* ¶ 57.) Gonzalez's new counsel filed an amended petition on February 14, 2014. (*Id.*)

The Circuit Court of Cook County issued a ruling in Gonzalez's favor on November 10, 2015. (*Id.* ¶ 107.) It found that the Police Board's decision to suspend Gonzalez was against the manifest weight of the evidence and violated his due process rights. (*Id.*) The state court ordered that Gonzalez's suspension be reversed along with any findings concerning rule violations. (*Id.* ¶ 108.)

### B.      Gonzalez Injured on Duty

On August 11, 2015, Gonzalez suffered a cervical sprain while on duty. (*Id.* ¶ 77.) As a result of his injury, Gonzalez was placed on injured-on-duty status the following day. (*Id.* ¶ 79.) In addition to his physical injury, Gonzalez also reported suffering from severe emotional distress stemming from his petition for administrative review pending before the state court. (*Id.* ¶¶ 80–82.) To treat his emotional distress, Gonzalez's physician prescribed him anxiety and stress medication and referred him to a psychologist. (*Id.* ¶ 81.) From August 12, 2015 to May 2, 2016, Gonzalez was taking five different medications to treat his injury and emotional distress. (*Id.* ¶ 78.) During that period, Gonzalez experienced significant side effects from the medications that caused him great discomfort. (*Id.*) About a week after his injury, Gonzalez was evaluated by an orthopedist who recommended that Gonzalez remain off duty until further notice. (*Id.* ¶ 83.)

Despite Gonzalez's injured-on-duty status, Gonzalez stopped receiving his salary on January 1, 2016. (*Id.* ¶ 116.)

### C.     Gonzalez Subjected to Harassment After the State Court's Ruling

Before the state court entered its decision reversing Gonzalez's suspension, Gonzalez was subjected to repeated incidents of harassment by his CPD colleagues—several of whom are named as Defendants here—in retaliation for filing his petition for administrative review. (*Id.* ¶¶ 64–76, 98–101.)[1] The harassment continued after the state court ruled in Gonzalez's favor.

On December 14, 2015, Gonzalez reported to the hospital to attend an appointment with his neurologist. (*Id.* ¶ 112.) While Gonzalez was checking in, Defendant Sergeant Andres Zayas, Jr. introduced himself. (*Id.*) Although it was just a simple introduction, Gonzalez interpreted it as an act of intimidation given his past harassment by CPD officers and the fact that his psychologist had previously advised certain members of the CPD—including Zayas—against contacting Gonzalez without his counsel present. (*Id.* ¶¶ 104, 111–12.) Fearing that Zayas was there to make an unlawful arrest, Gonzalez began experiencing heart palpitations, shortness of breath, and a high level of anxiety. (*Id.* ¶ 112.)

Gonzalez also claims that members of the CPD came to his home and harassed him and his family. (*Id.* ¶¶ 117, 139.) In one incident on March 24, 2017, Defendant Officers Luis Alejo and Orlando Mercado came to Gonzalez's home and confronted his aunt. (*Id.* ¶ 139.) They told his aunt that they intended to arrest and incarcerate Gonzalez if she did not cooperate with their demands. (*Id.*)

---

[1] Because of the *res judicata* effect of the state court's ruling on Gonzalez's petition for administrative review, this Court omits a detailed discussion of the harassment faced by Gonzalez prior to that ruling for the reasons discussed below. For more details regarding Gonzalez's earlier harassment, see the Court's memorandum opinion and order ruling on Defendants' previous motions to dismiss. (Dkt. No. 110.)

Because the CPD stopped paying him, Gonzalez filed for unemployment insurance benefits with the Illinois Department of Employment Security ("IDES") on August 21, 2016. (*Id.* ¶ 122.) However, the IDES sent Gonzalez a series of letters evidencing that the CPD had retaliated against him by submitting false documents and making false statements to the IDES so that it would deny Gonzalez unemployment benefits. (*Id.* ¶¶ 123–129.) The final letter officially denied Gonzalez's claim, stating that he was ineligible because he had been suspended by the CPD on December 15, 2015, for failing to report for duty. (*Id.* ¶ 128.) In reality, Gonzalez had not reported for work due to his psychologist's recommendation that he not return to work in any capacity and limitations caused by the medications he was taking. (*Id.* ¶ 129.) Gonzalez was officially terminated on March 16, 2017. (*Id.* ¶¶ 11, 137–38.)

## II. Procedural History

### A. This Court's Ruling on Defendants' Previous Motions to Dismiss

Gonzalez filed his original complaint in this action on August 10, 2016. (Dkt. No. 1.) Eight days later, he filed his First Amended Complaint ("FAC"). (Dkt. No. 6.) Defendants then filed four separate motions to dismiss the FAC, which this Court granted as to all federal question claims, holding that those claims were barred by the doctrine of *res judicata*. (Dkt. No. 110.) Specifically, the Court found that Gonzalez's federal question claims either were raised or could have been litigated in his petition for administrative review before the state court. While the Court stated that it otherwise would have declined to assert supplemental jurisdiction over the remaining state law claims, in anticipation of Gonzalez filing a SAC, it went on to address the merits of those claims. After dismissing all but two state law claims, the Court granted Gonzalez leave to file his SAC but instructed him to ensure that it contained a basis for the Court's exercise of subject-matter jurisdiction.

**B.      Gonzalez's Attempts to Retrieve His Personal Property from the CPD**

After his second suspension and the cessation of his pay, Gonzalez reported to the CPD on April 14, 2016, to turn in his badge and CPD ID. (SAC ¶ 131.) At that time, Gonzalez requested that the CPD return the contents of his personal locker and what he refers to as his "bins." (*Id.*) He gave detailed instructions to help the CPD locate his locker and bins. (*Id.*) However, six months later, Gonzalez's property still had not been returned to him. (*Id.* ¶ 133.) Gonzalez raised the issue in a hearing before this Court on October 20, 2016. (*Id.* ¶ 147.) In response, the Court issued a preservation order instructing the parties to preserve all evidence. (*Id.*)

At a hearing on April 12, 2018, Gonzalez informed the Court that his request for the return of his personal property in his locker and bins still had not been fulfilled. (*Id.* ¶ 153.) While he indicated that recovering the property was critical to his ability to support fully potential federal question claims in the SAC, Gonzalez provided few details as to which missing items would support his claims and how. (*Id.*) The Court instructed Gonzalez to make a formal request to the City for return of the items. (*Id.*) Subsequently, Gonzalez made three separate requests to the City seeking documentation detailing all of Gonzalez's personal property that the CPD was able to locate. (*Id.* ¶¶ 154–57.) Having failed to receive any personal property or documentation of what property the CPD had in its possession, Gonzalez filed a motion to compel on May 8, 2018. (*Id.* ¶ 158.)

During the hearing on the motion to compel, the City's counsel informed the Court that the CPD's investigation regarding the recovery of Gonzalez's personal property was ongoing. (*Id.* ¶ 161.) Again, Gonzalez insisted that he could not properly file the SAC without access to the property he had left in his locker and bins. (*Id.*) He explained that the items he was seeking to recover consisted of equipment, notices, documents, and attorney-client privileged information.

6

(*Id.* ¶ 162.) In response, the Court issued a second evidence preservation order and instructed the City to retain and preserve Gonzalez's property and take appropriate steps to ensure that his property was not disposed of or spoiled. (*Id.* ¶ 163.)

On June 7, 2018, counsel for the City informed the Court that, while the City had been able to locate Gonzalez's locker, it was unable to locate his bins. (*Id.* ¶¶ 167–68.) Shortly thereafter, Gonzalez emailed the City's counsel to provide further details about the location of his bins. (*Id.* ¶ 172.) In response, the City informed Gonzalez that it had the contents of his locker in a sealed bag that was available for pickup but was unsuccessful in locating his bins. (*Id.* ¶ 173.) The City noted that there were a number of cabinet drawers near the area described in Gonzalez's email but none were labeled with Gonzalez's name. (*Id.*) Nonetheless, the City offered Gonzalez the opportunity to inspect the cabinet drawers himself. (*Id.*) Yet Gonzalez declined the opportunity and refused to visit any CPD facility because of the harassment and retaliation inflicted upon him by members of the CPD. (*Id.* ¶ 174.) Ultimately, Gonzalez's counsel retrieved the items recovered from Gonzalez's locker from the City's counsel's office. (*Id.* ¶ 176.) According to Gonzalez, the items in the bag provided to his counsel were not his property. (*Id.* ¶ 178.) The City later clarified that the items it gave to Gonzalez were from his gym locker rather than his personal locker. (*Id.* ¶ 181.)

By September 2018, the City had located Gonzalez's personal locker and sent his counsel an inventory sheet that summarized the items recovered from the locker. (*Id.* ¶ 183.) However, Gonzalez's counsel took issue with the inventory sheet. (*Id.* ¶ 184.) He claimed it was not completed in a manner consistent with department policy. (*Id.*) Furthermore, Gonzalez's counsel claimed that several items were missing from the inventory sheet, such as Gonzalez's police hat and the police shield affixed to it. (*Id.*)

Gonzalez did not recover the items from his personal locker until March 22, 2019. (Pl.'s Mot. for Default J. ¶ 59, Dkt. No. 201.) After inspection, it became apparent to Gonzalez that several items he had left behind in his locker were missing. (*Id.* ¶ 60.) Besides the missing police hat and shield, he also points to the fact that certain items turned over to Gonzalez did not belong to him. (*Id.*) Moreover, certain documents Gonzalez planned to use in support of his federal question claims in the SAC were missing. (*Id.*)

### C.     Gonzalez Fails to Respond to the Present Motions to Dismiss

While the Court gave Gonzalez an April 23, 2018, deadline to file his SAC, Gonzalez sought and received multiple extensions of this deadline due to his then-ongoing efforts to retrieve his personal property from the City. During this period, Gonzalez also brought a motion pursuant to Federal Rule of Civil Procedure 60(b), seeking to vacate this Court's memorandum opinion and order dismissing all the federal question claims and most of the state law claims from the FAC due to the City's failure to timely return his personal property. This Court denied Gonzalez's motion to vacate on November 27, 2018, and gave Gonzalez a December 21, 2018 deadline to file his SAC. (Dkt. No. 163.) Gonzalez timely filed the SAC on that date, but then sought to file a corrected SAC about two weeks later, which this Court allowed. (Dkt. No. 164.) The federal claims in the SAC included claims under 42 U.S.C. § 1983 for violation of Gonzalez's rights under the Fourteenth Amendment's Due Process Clause, retaliation in violation of his First Amendment rights, failure to intervene, and conspiracy to deprive Gonzalez of his constitutional rights, along with a claim under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* In addition, the SAC contained several state-law claims.

Defendants filed the four motions to dismiss presently before this Court in April 2019. (Dkt. Nos. 188–90, 192.) Gonzalez had until May 15, 2019 to file his opposition. On May 8,

2019, Gonzalez moved for an extension of time to file his opposition. (Dkt. No. 195.) Gonzalez represented that he was diligently working on drafting his responses to the four motions to dismiss but nonetheless required three additional weeks to complete them. The Court granted the motion and gave Gonzalez until June 10, 2019, but also stated that it would not be inclined to grant any further extension requests. (Dkt. No. 200.)

On June 10, 2019, instead of filing a response to Defendants' motions to dismiss, Gonzalez filed a motion for entry of default judgment under Federal Rule of Civil Procedure 37. (Dkt. No. 201.) In his motion, Gonzalez contended that Defendants intentionally spoiled relevant evidence—specifically, the items purportedly missing from his locker and bins—in violation of this Court's preservation orders and attempted to conceal their violations by making false representations to the Court. During a hearing on the motion, Gonzalez represented to this Court that he was unable to respond to the motions to dismiss because he was missing relevant evidence from his locker and bins. Consequently, the Court closed briefing on the motions to dismiss and took them, along with Gonzalez's motion for entry of default judgment, under advisement for ruling.

## DISCUSSION

### I.      Gonzalez's Motion for Entry of Default Judgment

According to Gonzalez, he was unable to respond to Defendants' motions to dismiss because the City spoiled and tampered with the contents of his locker and bins. He contends that the City's actions violated this Court's two preservation orders instructing Defendants to retain and preserve all items they recovered belonging to Gonzalez. Because he claims that the City's actions prevented him from accessing evidence adverse to Defendants and necessary to fully state

his federal question claims and respond to the motions to dismiss, Gonzalez asks that the Court enter a default judgment against all Defendants.

Under Federal Rule of Civil Procedure 37(b), the Court may sanction a party for failing to obey a discovery order.[2] One possible sanction is the entry of default judgment against the disobedient party. Fed. R. Civ. P. 37(b)(2)(A)(vi). "Default judgment is strong medicine for discovery abuse. It is appropriate only where . . . a party displays willfulness, bad faith, or fault." *Domanus v. Lewicki*, 742 F.3d 290, 301 (7th Cir. 2014) (internal quotation marks and citations omitted). Moreover, an award of Rule 37 sanctions "must be proportionate to the circumstances surrounding the failure to comply with discovery." *Crown Life Ins. v. Craig*, 995 F.2d 1376, 1382 (7th Cir. 1993). The moving party must establish the facts supporting a decision to enter default judgment by a preponderance of the evidence. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 781 (7th Cir. 2016).

Gonzalez seeks the entry of default judgment as a sanction for Defendants' alleged spoliation of material evidence.[3] "Spoliation of evidence occurs when one party destroys evidence relevant to an issue in the case." *Smith v. United States*, 293 F.3d 984, 988 (7th Cir. 2002). Sanctions for spoliation are only appropriate where the party accused of destroying evidence "acted willfully [and] in bad faith." *Banks v. Enova Fin.*, No. 10 C 4060, 2012 WL 12539830, at

---

[2] While discovery in this action has been stayed, this Court's preservation order nonetheless can be treated as a discovery order given that it was issued in an effort to preserve discoverable evidence. *See Banks v. Enova Fin.*, No. 10 C 4060, 2012 WL 12539830, at *3 (N.D. Ill. July 10, 2012) ("If spoliation of evidence violates a court order or affects the court's discovery schedule, sanctions may be imposed under Rule 37."). In any case, the Court has inherent authority to impose default judgment as a sanction for failure to preserve or produce evidence. *E.g.*, *Grubb v. Bd. of Trs. of the Univ. of Ill.*, 730 F. Supp. 2d 860, 864 (N.D. Ill. 2010). The analysis for imposing sanctions under the Court's inherent authority is "essentially the same" as under Rule 37. *Northington v. H&M Int'l*, No. 08-CV-6297, 2011 WL 663055, at *12 (N.D. Ill. Jan. 12, 2011).

[3] Based on Gonzalez's allegations, the primary Defendant involved in the alleged spoliation is the City. Nonetheless, because Gonzalez's Rule 37 motion is directed at all Defendants, the Court will refer to them collectively.

*4 (N.D. Ill. July 10, 2012). "To find bad faith, a court must determine that the party intended to withhold unfavorable information." *Id.* (internal quotation marks omitted).

Here, Gonzalez falls far short of carrying his burden of establishing that default judgment is warranted. As an initial matter, he fails to provide any concrete details whatsoever as to what evidence was destroyed and how that evidence was necessary to plead federal question claims properly in the SAC. Indeed, both in his motion and in open court, Gonzalez has consistently been vague in describing the personal property he left behind in his locker and bins. He has given general statements that his locker contained police gear and equipment. But even as to the contents of his locker, the only concrete items that Gonzalez identifies as missing are his police hat and shield. In response, Defendants represent that both those items are property of the City that Gonzalez was not entitled to keep anyway. That explanation makes perfect sense and refutes any contention that Defendants spoiled evidence; they simply kept what was their property from the beginning. In any case, Gonzalez never states that those missing items were necessary for him to plead federal question claims and this Court is hard-pressed to understand how they could be.

As to the contents of his bins, Gonzalez claims that they contained notices, inter-office memoranda, critical documentation, notes, and attorney-client privileged information. It is perhaps more realistic that such paperwork might contain information that could support Gonzalez's claims as opposed to his police hat and shield. Yet Gonzalez is completely unable to provide even the slightest description as to what information might be in those documents and how the missing documents would support his claims. Instead, he repeats the conclusory statement that those documents contain information necessary for him to set forth his federal question claims fully. Gonzalez's inability to supply more details leads this Court to conclude that Gonzalez is engaged in sheer speculation as to the evidentiary value of the contents of his own

bins. *See Locklin v. Day-Glo Color Corp.*, 429 F.2d 873, 879 (7th Cir. 1970) ("[A] finding may not rest on guess or speculation.").

Finally, there is no reason to believe that the purportedly missing documents were in fact lost or destroyed. It may be the case that those specific copies in Gonzalez's locker or bins were lost or destroyed. But even based on Gonzalez's vague descriptions of the documents, the Court would expect that they could be obtained from other parties during discovery. Indeed, one would expect copies of attorney-client privileged documents supposedly in Gonzalez's bins also to be in his counsel's possession. And any documents from the CPD, such as inter-office memoranda, should be easily obtainable from the City. Furthermore, Gonzalez's insistence that he is unable to plead federal question claims adequately without the documents in his bins borders on farcical. At the pleading stage, it is sufficient that Gonzalez's allegations "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Thus, if the supposedly missing documents contained such critical information, the Court would think that Gonzalez could include allegations in the SAC based on his recollection of the documents' substance and then develop evidentiary support in discovery. *See McGreal v. Vill. of Orland Park*, 928 F.3d 556, 560 (7th Cir. 2019) ("An attorney might reasonably believe that discovery will reveal evidentiary support. After discovery, an attorney may proceed only if that hypothetical evidence has materialized.").

Even if Defendants actually lost or destroyed the contents of Gonzalez's locker and bins, Gonzalez has failed to show that such spoliation was done with the intention of withholding information unfavorable to Defendants. Indeed, Gonzalez first sought the return of the contents of his locker and bins in April 2016—about four months prior to initiating this lawsuit. At the time he first sought to retrieve those items, Gonzalez gave no indication that he believed them to be

evidence in an upcoming lawsuit. By his own allegations, it was not until Gonzalez's counsel sent an email to the City's counsel on October 6, 2016, that any Defendant had notice that Gonzalez's lockers and bins might contain relevant evidence. (SAC ¶ 133; Pl.'s Mot. for Default J. ¶ 20.) According to the City, in late 2015 or early 2016, Gonzalez's former unit merged with another unit and a different unit moved into the space previously occupied by Gonzalez's unit. It is entirely possible that Gonzalez's property got lost during this reorganization. Thus, his property may have been lost, misplaced, or destroyed before Gonzalez even requested its return. Or it may have been lost before the initiation of this lawsuit or before Gonzalez gave notice that his locker and bins contained relevant evidence. In either scenario, Defendants certainly would not have acted in bad faith. At the very least, Gonzalez has given the Court no evidence to show that it is more likely than not that Defendants lost or destroyed the contents of his locker and bins in bad faith as opposed to for other equally plausible and less culpable reasons.

Gonzalez alludes to five misrepresentations as evidence of Defendants' supposed bad faith. Yet this Court previously considered most of those misrepresentations when it denied Gonzalez's earlier Rule 60(b) motion and will not reconsider that ruling now. The only new misrepresentation set forth in Gonzalez's present motion is his claim that the City falsely represented in its motion to dismiss that "the contents of Gonzalez's mail bin are not shown to be lost or destroyed." (Pl.'s Mot. for Default J. ¶ 96.) But when viewed in context, the City was simply claiming that Gonzalez did not show that the contents of his bins were lost or destroyed because he "references correspondence and notices, which can be obtained from alternative sources, should these communications ever be identified." (Def. City of Chi.'s Mot. to Dismiss the SAC at 19, Dkt. No. 188.) That is an argument with which this Court agrees, as discussed above. Moreover, by taking a snippet from the City's argument out of context and asserting that it

had made a sanctionable misrepresentation, it is Gonzalez who comes dangerously close to a misrepresentation before this Court.

In short, Gonzalez has not shown that Defendants lost or destroyed any evidence material to this matter. To the extent Defendants lost or destroyed any of Gonzalez's personal property at all, he also fails to show that they acted with the intention of withholding evidence unfavorable to their defense. Consequently, Gonzalez's motion for entry of default judgment is denied.[4]

## II. Defendants' Motions to Dismiss

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[4] The Northern District of Illinois's Local Rule 7.1 imposes a 15-page limit on all briefs. A party may not file a longer brief without prior approval of the Court. Yet Gonzalez's motion for entry of default judgment significantly exceeded that page limit without this Court's approval. After the Court brought to Gonzalez's attention his violation of this rule, Gonzalez filed a motion requesting that the Court consider his entire motion for entry of default judgment. (Dkt. No. 208.) In that motion, Gonzalez claims that because this Court gave him leave to file a 75-page response to the motion to dismiss that leave should transfer over to his motion for entry of default judgment, which he filed in lieu of a response. Of course, Gonzalez was given leave to file a voluminous response because he claimed it was necessary to fully respond to four different motions to dismiss, each addressing numerous claims. Here, Gonzalez addresses a discrete issue concerning the loss of his personal property. He should easily have been able to address that in 15 pages or less. Exceeding the page limit was not only unnecessary but also counter-productive because it resulted in a rambling and disorganized brief that failed to effectively convey the pertinent facts and Gonzalez's legal arguments. *See Miller UK Ltd. v. Caterpillar, Inc.*, 292 F.R.D. 590, 592 (N.D. Ill. 2013) ("Page limitations are designed as much for the benefit of the litigants as for the benefit of the court." (internal quotation marks omitted)). Nonetheless, the Court has thoroughly considered the entirety of Gonzalez's motion for entry of default judgment. Therefore, the Court will treat Gonzalez's motion requesting that the Court consider the entirety of his motion for entry of default judgment as a *post hoc* motion for leave to file excess pages and grant the motion.

liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

### A.    Forfeiture

Defendants filed four separate motions to dismiss. Together, the motions to dismiss seek dismissal of every claim in the SAC. Instead of filing a response, Gonzalez filed his motion for entry of default judgment, which the Court has now denied. That leaves the motions to dismiss unopposed.[5] Gonzalez's failure to respond to the motions to dismiss operates as a waiver and forfeiture of his right to oppose dismissal of the SAC. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Dillard v. Chi. State Univ.*, No. 11 C 3362, 2012 WL 714727, at *2 (N.D. Ill. Mar. 1, 2012). Consequently, this Court could dismiss the SAC without analyzing the merits of Defendants' motions. *Woody v. Illinois*, No. 10 C 50017, 2013 WL 4945226, at *2 (N.D. Ill. Sept. 10, 2013).

For the sake of completeness, the Court will address the merits of Defendants' grounds for dismissing the federal question claims—specifically, Gonzalez's constitutional claims and his Americans with Disabilities Act claim. In undertaking this analysis, the Court will simply ensure that Defendants have established plausible reasons for dismissing the claims; it will not come up with defenses for Gonzalez. *Alioto*, 651 F.3d at 721 ("[J]udges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against defendants' reasoning." (internal quotation marks omitted)). If Defendants establish grounds for dismissing all federal question claims, the Court will stop there and dismiss the SAC. As this Court previously stated in its memorandum opinion and order addressing the first motions to dismiss, if the SAC does not

---

[5] Gonzalez certainly could have both responded to the motions to dismiss and moved for default judgment and thus preserved all of his arguments.

include a basis for this Court to exercise subject-matter jurisdiction, it will not exercise

supplemental jurisdiction over the state-law claims and the case will be dismissed in its entirety.

*See Gonzalez v. City of Chicago*, No. 16-cv-08012, 2018 WL 1561735, at *5 & n.5, *11 (N.D. Ill.

Mar. 30, 2018).

### B.    Merits

#### 1)    First Amendment Retaliation

Gonzalez contends that Defendants retaliated against him in violation of his rights under

the First Amendment to the United States Constitution. Specifically, he asserts that by filing his

petition for administrative review in state court, he was speaking on a matter of public concern. In

response to his protected speech, according to Gonzalez, Defendants subjected him to a campaign

of harassment and reprisal.

"Government retaliation tends to chill an individual's exercise of his First Amendment

rights, and this principle applies with equal force in the context of public-sector employment."

*Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). Thus, a public employer may not respond

to an employee's protected speech with actions meant to deter that speech. *Id.* To plead a First

Amendment retaliation claim, a public employee must show that: "(1) his speech was

constitutionally protected, (2) he has suffered a deprivation likely to deter free speech, and (3) his

speech was at least a motivating factor in the employer's action." *Id.*

Defendants contend that Gonzalez's petition for administrative review was not protected

speech. While a lawsuit may be protected speech, a public employee only has a First Amendment

retaliation claim where the lawsuit involves a matter of public concern. *Zorzi v. Cty. of Putnam*,

30 F.3d 885, 896 (7th Cir. 1994). To determine whether a lawsuit involves a matter of public

concern, the Court must consider the "content, form and context of [the] lawsuit." *Id.* Here,

Defendants argue that Gonzalez's petition for administrative review did not concern a matter of public concern because it sought only personal relief. "Purely personal grievances do not garner First Amendment protection." *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 706 (7th Cir. 2010).

This Court agrees that Gonzalez's petition for administrative review sought purely personal relief, as its object was to overturn Gonzalez's suspension. Although his lawsuit might have tangentially implicated some matter of public interest, it was not protected speech because it focused solely on Gonzalez's private interest in avoiding suspension. *Milwaukee Deputy Sheriff's Ass'n v. Clarke*, 574 F.3d 370, 379–80 (7th Cir. 2009). For that reason, Gonzalez's First Amendment retaliation claim is dismissed.

### 2)    *Procedural Due Process*

Shortly after Gonzalez's victory with his petition for administrative review, the City stopped paying him (an action later characterized as a suspension) and ultimately terminated his employment as a CPD officer. Gonzalez argues that the City's actions violated his procedural due process rights because it failed to comply with its own procedures when it suspended him without pay and ultimately terminated him.

The procedural due process analysis requires a court to first "determine whether the plaintiff was deprived of a protected interest" and then "determine what process is due." *Leavell v. Ill. Dep't of Nat. Resources*, 600 F.3d 798, 804 (7th Cir. 2010). In determining what process is due, courts distinguish between claims based on established state procedures and claims based on random, unauthorized acts by state employees. *Id.* Here, because Gonzalez does not complain about the procedures themselves but rather the City's failure to follow those procedures, his claim is based on the random unauthorized acts of state employees. In such a case, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the Due

Process Clause if a meaningful postdeprivation remedy for the loss is available." *Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996) (internal quotation marks omitted).

As to his suspension without pay, Gonzalez claims there was no basis to suspend him for failing to show up to work because he had previously been placed on injured-on-duty status. While Gonzalez contends that he was suspended without notice or any opportunity to contest his suspension, those allegations concern the lack of pre-deprivation remedies afforded to him. *Bradley v. Vill. of University Park*, 929 F.3d 875, 882 (7th Cir. 2019) ("[T]he constitutional requirements for predeprivation procedures are well-established: notice of the proposed deprivation, a statement of reasons, and an opportunity to be heard in response."). He makes no allegations whatsoever concerning what post-deprivation remedies were available to him and whether he availed himself of such remedies. At the same time, he raises several allegations concerning the requirements of the applicable collective bargaining agreement. The City attaches as an exhibit to its motion to dismiss the collective bargaining agreement, which includes a section outlining grievance procedures for medical issues. (Def. City of Chi.'s Mot. to Dismiss the SAC, Ex. H § 9.5, Dkt. No. 188-2.)[6] Gonzalez does not allege that he ever filed a grievance concerning his suspension without pay nor does he allege that the grievance process was an inadequate post-deprivation remedy.

Similarly, Gonzalez does not allege that he availed himself of any post-deprivation remedy concerning his termination or that such remedy was inadequate. The collective bargaining agreement specifically states that the separation of an officer from the CPD is cognizable only before the Police Board. (*Id.* § 9.1.) Moreover, Illinois state law allows the party affected by a

---

[6] Because the collective bargaining agreement is referred to in Gonzalez's complaint and central to his procedural due process claims, the Court will treat the attached collective bargaining agreement as incorporated by reference into the SAC. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

final administrative action to appeal that action in state court. *See* 735 ILCS 5/3-103; *Stachowski v. Town of Cicero*, 425 F.3d 1075, 1077–78 (7th Cir. 2005) (noting that the plaintiff could have sought administrative review of his termination as a police officer under 735 ILCS 5/3-101 *et seq.*). Numerous courts have held that Illinois state law provides a sufficient post-deprivation remedy. *See Vargas v. Cook Cty. Sheriff's Merit Bd.*, No. 18 CV 1598, 2019 WL 1418059, at *7 (N.D. Ill. Mar. 29, 2019) (listing cases). Thus, Gonzalez fails to sufficiently allege that he was deprived of an adequate post-deprivation remedy for both his suspension and his termination, and his procedural due process claim is dismissed.

### 3) *Substantive Due Process*

Gonzalez argues that his suspension and termination also violated his substantive due process rights. However, "an alleged wrongful termination of public employment is not actionable as a violation of substantive due process unless the employee also alleges the defendants violated some other constitutional right or that state remedies were inadequate." *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010). As discussed above, Gonzalez does not allege that his state remedies were inadequate. Nor does he plausibly allege that his suspension or termination violated some other constitutional right. Consequently, his substantive due process claim is dismissed.

### 4) *Spoliation*

In addition to his motion for default judgment, Gonzalez attempts to fashion a due process claim out of his spoliation allegations. To state a due process claim for destruction of evidence, a plaintiff must show: "(1) bad faith on the part of the government; (2) that the exculpatory value of the evidence was apparent before the evidence was destroyed; and (3) that the evidence was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Anderson v. City of Chicago*, No. 99 C 0004, 2003 WL 1731846, at

*6 (N.D. Ill. Mar. 31, 2003) (quoting *United States v. Watts*, 29 F.3d 287, 290 (7th Cir. 1994)). Gonzalez fails to state a due process spoliation claim for all the same reasons the Court discussed above in denying his motion for entry of default judgment.

### 5) Remaining Constitutional Claims

Finally, Gonzalez attempts to state claims under § 1983 for failure to intervene and conspiracy. For both failure to intervene and conspiracy claims, a plaintiff must establish an underlying constitutional violation. *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1049 (N.D. Ill. 2018) (holding that § 1983 failure to intervene and conspiracy claims "rise and fall with the underlying constitutional violations"). Given the Court's dismissal of Gonzalez's substantive constitutional claims, his failure to intervene and conspiracy claims must be dismissed as well.

### 6) Americans With Disabilities Act

In addition to his constitutional claims, Gonzalez attempts to plead a claim for violation of the Americans with Disabilities Act. Specifically, he claims that the City discriminated against him by failing to provide him a reasonable accommodation so that he could continue working for the CPD. To state a reasonable accommodation claim under the Americans with Disabilities Act, a plaintiff must allege that: "1) he was disabled; 2) his employer was aware of his disability; and 3) he was a qualified individual who, with or without reasonable accommodation, could perform the essential functions of the employment position." *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001). However, Gonzalez's reasonable accommodation claim fails because he expressly alleges that "he could ***not*** perform his essential job functions with or without reasonable accommodation." (SAC ¶ 276 (emphasis added).) Gonzalez further cites medical opinions from treating physicians attesting to his inability to return to work. (*Id.* ¶¶ 278–79.) Consequently, his Americans with Disabilities Act claim is dismissed as well.

**CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss (Dkt. Nos. 188–190, 192) are granted and Gonzalez's motion for entry of default judgment (Dkt. No. 201) is denied. The Court dismisses all of Gonzalez's federal question claims with prejudice. The Court declines to exercise supplemental jurisdiction over the remaining state law claims. Thus all of those claims are dismissed without prejudice for lack of jurisdiction. Gonzalez shall have one year to refile his action in state court. *See* 735 ILCS 5/13-217; *Davis v. Cook Cty.*, 534 F.3d 650, 654 (7th Cir. 2008).

ENTERED:

Dated:  March 13, 2020

_____
Andrea R. Wood
United States District Judge